**Anita De Armond VOGEL and Garrett Vogel, Appellants,**

v.

**THE TRAVELERS INDEMNITY COMPANY, Appellee.**

No. 04–97–00774–CV.

Court of Appeals of Texas, San Antonio.

March 25, 1998.

Glenn Grossenbachler, Kenneth J. Burch, Law Office of Glenn Grossenbacher, San Antonio, for Appellant.

Jerry T. Steed, Baucum & Steed, P.C., Patrick K. Sheehan, Cauthorn Hale Hornberger Fuller Sheehan & Becker, San Antonio, for Appellee.

Before HARDBERGER, C.J., and LÓPEZ and GREEN, JJ.

## OPINION

HARDBERGER, Chief Justice.

Appellants, Anita De Armond Vogel and Garrett Vogel ("Vogels"), appeal a summary judgment granted in favor of appellee, The Travelers Indemnity Company ("Travelers"). The Vogels sued Travelers for various claims relating to Travelers' refusal to renew and extend certain indebtedness and its foreclosure of the real property securing the payment of that debt. In this appeal, the Vogels raise seven points of error, contending that the trial court erred in considering certain affidavits as summary judgment evidence and in rendering summary judgment as to each of the Vogels' claims. We overrule the Vogels' points of error and affirm the trial court's judgment.

### FACTUAL AND PROCEDURAL HISTORY

On March 1, 1976, George L. De Armond, Anita's father ("George"), and Drucilla De Armond, Anita's stepmother ("Drucilla"), ex-

ecuted a First Mortgage Note in favor of Travelers in the principal sum of $250,000 (the "Note"). The Note was secured by a First Deed of Trust Security Agreement and Financing Statement, pledging approximately 605 acres of land in Bandera County, Texas as security (the "Deed of Trust"). The unpaid balance due under the Note matured on October 1, 1990.

The Vogels allege that George, and possibly Drucilla, executed a contract for deed contemporaneously with the execution of the Note and Deed of Trust. The terms of the contract for deed conveyed the real property pledged to secure the Note to Anita in exchange for Anita's agreement to pay the Note and the execution of one or more notes totaling $50,000. No documentation evidencing this transaction could be located; however, the Vogels asserted that Travelers knowingly and willingly accepted payments on the Note from them.

In August of 1979, George died, and he devised all of his separate property to Anita. The real property pledged to secure the Note was allegedly separate property. The Vogels admitted that the debt evidenced by the Note became an obligation of the estate. George's estate was closed in or about 1981.

Anita failed to pay the installment due under the Note on April 1, 1985. Travelers agreed to refrain from accelerating the Note and to allow Anita to cure the default by making the payment in installments. In exchange, Anita agreed to a modification of the Note, increasing the interest rate on matured unpaid amounts to 15%.

The loan was scheduled to mature on October 1, 1990. Prior to the maturity date, the Vogels and Travelers began negotiating a renewal and extension of the loan. On October 4, 1990, Travelers forwarded a letter agreement to the Vogels, conditionally agreeing to review and consider a two year renewal. The conditions to Travelers' agreement

included obtaining evidence of title and a title policy.

The Vogels accepted the terms of the letter agreement on October 25, 1990. The Vogels also paid the $2,000 non-refundable application fee which was due upon acceptance of the letter agreement proposal. In January of 1991, the Vogels obtained an appraisal of the real property which was one of the conditions in the letter agreement. The property appraised at $515,600.

On March 27, 1991, Travelers' attorney forwarded a letter to the Vogels, setting forth five prerequisites that the title company required the Vogels to meet before the title company would be in a position to issue the necessary title policy.[1] The letter states that if the listed requirements are not satisfactorily completed on or before April 26, 1991, "a very reasonable period of time under these circumstances, then it will be apparent that the terms of the October 4, 1990 letter will not (and cannot) be satisfied in order to accomplish renewal of the loan."

On May 22, 1991, Travelers demanded payment in full from Anita by June 11, 1991. When payment was not received, the substitute trustee under the Deed of Trust executed a notice of sale for the real property. On July 2, 1991, the morning of the date noticed for the sale, the Vogels filed an application for temporary restraining order and temporary and permanent injunction. The 216th District Court of Bandera County issued the temporary restraining order and set the temporary injunction for hearing for July 11, 1991. On July 10, 1991, Travelers removed the case to federal court.

Travelers re-noticed the sale of the real property for August 6, 1991. Although the Vogels again attempted to enjoin the sale in district court, the applications for temporary restraining orders were denied, and the property was sold at foreclosure and purchased by Travelers on August 6, 1991. On August 30, 1991, the federal court considered

1. The requirements included: (1) a warranty deed from Drucilla, individually and as independent executrix of George's estate, conveying the real property to Anita; (2) an amendment to the estate's inventory to include the real property in the schedule of separate property; (3) evidence of no payment of, or no assessment of, estate

taxes and state inheritance taxes; (4) evidence that the inclusion of the real property did not increase the estate's tax liabilities, and if so, evidence of payment of such additional taxes; and (5) evidence that three abstracts of judgments had been paid or otherwise satisfied and released.

Anita's motion to dismiss that cause for mootness. The federal court noted that the sole relief sought in that action was injunctive relief to prevent the foreclosure sale. Since the foreclosure sale had taken place, the federal court dismissed the cause as moot.

The Vogels pursued the possibility of repurchasing the property from Travelers. On October 8, 1991, Travelers' general manager forwarded a letter to the Vogels containing a proposal for the Vogels purchase of the property. The proposal was to expire on October 15, 1991, if not accepted in writing. There is no indication in our record that the offer was accepted. Garret Vogel stated in his affidavit in response to Travelers' motion for summary judgment that the Vogels met with Travelers' representatives on October 25, 1991, and the obstacles for the resale were an increase in the interest rate and an increase in the principal amount of the loan to include costs relating to the foreclosure.

On or about August 5, 1993, the Vogels sued Travelers. On February 12, 1997, Travelers filed an amended motion for summary judgment. On March 27, 1997, the Vogels filed a response to the motion and an amended original petition in which they raised two additional claims: breach of contract and restitution. On April 8, 1997, the trial court held a hearing on the motion, taking certain evidentiary issues under advisement. On May 14, 1997, the trial court forwarded a letter to the attorneys for the Vogels and Travelers, stating that he intended to grant the motion for summary judgment. The trial court requested that the Vogels' attorney review the proposed order and determine whether he had any objections. The order was subsequently signed by the trial court on June 3, 1997, and the Vogels appeal that order.

### STANDARD OF REVIEW

The general standard for reviewing a motion for summary judgment has been clearly established. The movant for summary judgment is first required to disprove at least one of the essential elements of each of the plaintiff's causes of action in order to prevail on summary judgment. *Lear Siegler, Inc. v.*

*Perez,* 819 S.W.2d 470, 471 (Tex.1991). This initial burden requires the movant to show that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. *Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548–49 (Tex.1985). In determining whether a material fact issue exists to preclude summary judgment, evidence favoring the non-movant is taken as true, and all reasonable inferences are indulged in favor of the non-movant. *Id.* Any doubt is resolved in favor of the non-movant. *Id.*

A defendant moving for summary judgment based on an affirmative defense must conclusively prove all elements of that defense as a matter of law such that there is no genuine issue of material fact. *See Roark v. Stallworth Oil & Gas, Inc.,* 813 S.W.2d 492, 494–95 (Tex.1991); *Montgomery v. Kennedy,* 669 S.W.2d 309, 310–11 (Tex.1984). Once the defendant produces sufficient evidence to establish a right to summary judgment, the plaintiff must set forth sufficient evidence to give rise to a genuine issue of material fact. *Pinckley v. Dr. Francisco Gallegos, M.D., P.A.,* 740 S.W.2d 529, 531 (Tex.App.—San Antonio 1987, writ denied).

In the instant case, the trial court granted a general summary judgment. Therefore, we must consider whether any theory asserted in Travelers' motion supports the summary judgment. *State Farm Fire & Cas. Co. v. S.S.,* 858 S.W.2d 374, 380 (Tex.1993). We will affirm the summary judgment if any theory is meritorious. *Id.*

### SUMMARY JUDGMENT AFFIDAVITS

In their first and second points of error, the Vogels contend that the trial court erred in failing to sustain their objections to the affidavits of Billy Walker and James Norman. Travelers counters that the objections were waived or, alternatively, were without merit. We do not find it necessary to reach this issue. Travelers sought to introduce the affidavits as evidence that the conditions to the renewal agreement had not been met. One of those conditions was a title policy, and the title company required a warranty deed from Drucilla before it would issue that policy. Since Garrett admitted in his affidavit

that they could only obtain a quitclaim deed from Drucilla, the summary judgment evidence conclusively established that the conditions to the renewal agreement were not met even if we do not consider the affidavits of Walker and Norman.

### RES JUDICATA

In their third point of error, the Vogels contend that summary judgment would be improper based on Travelers' affirmative defense of res judicata.

■■■ Res judicata is only applicable where there is: (1) a prior final judgment on the merits by a court of competent jurisdiction; (2) identity of parties or those in privity with them; and (3) a second action based on the same claims as were raised or could have been raised in the first action. *McGee v. McGee*, 936 S.W.2d 360, 363 (Tex.App.—Waco 1996, writ denied). Res judicata, or claims preclusion, prevents not only the relitigation of claims actually and finally adjudicated in a prior suit but also the litigation of related matters that, with the use of diligence, should have been litigated in the prior suit. *Barr v. Resolution Trust Corp.*, 837 S.W.2d 627, 628 (Tex.1992). The voluntary withdrawal or dismissal of claims from an earlier suit will not preclude the operation of res judicata to bar their assertion in a subsequent suit, even where such claims are dismissed without prejudice. *Jones v. Nightingale*, 900 S.W.2d 87, 89–90 (Tex.App.—San Antonio 1995, writ ref'd).

■■■ Determining what constitutes the subject matter of a suit requires an examination of the factual background of the claim or claims in the prior litigation. *Barr*, 837 S.W.2d at 630. Texas has adopted the "transactional" approach to res judicata. *Getty Oil Co. v. Insurance Co. of North America*, 845 S.W.2d 794, 798 (Tex.1992), *cert. denied*, 510 U.S. 820, 114 S.Ct. 76, 126 L.Ed.2d 45 (1993). In determining whether claims arise out of the same subject matter and thereby constitute a single "transaction," the court considers: (1) their relatedness in time, space, origin or motivation; (2) whether the claims form a convenient trial unit; and (3) whether their treatment as a trial unit

conforms to the parties' expectations or business understanding or usage. *See id.* at 799.

■■■ In order to establish that the res judicata defense applies, the party moving for summary judgment "must produce summary judgment evidence, including verified or certified copies of the judgment and pleadings that establish the applicability of the doctrine." *Jones*, 900 S.W.2d at 88–89. Travelers' summary judgment evidence consisted of: (1) a certified copy of Travelers' Notice of Removal, with the state court pleadings and order attached; (2) a certified copy of the Certificate of Notice of Filing of Notice of Removal; (3) a certified copy of the order granting plaintiff's motion to dismiss for mootness; and (4) a certified copy of the federal court's dismissal judgment.

■■■ Clearly, the Vogels' claims in this case were not previously litigated in the federal suit, and there was no prior final judgment on the merits. *See McGee*, 936 S.W.2d at 363. In addition, the claim asserted in the federal suit and the claims asserted in this suit are not related in time, space, origin or motivation. The action seeking an injunction arose prior to the foreclosure, and the action seeking recovery based on the wrongful act of foreclosure and the breaches of any duties relating thereto could only arise after the actual foreclosure. *See Getty Oil Co.*, 845 S.W.2d at 798. Furthermore, treating the claims as a trial unit did not conform to Anita's expectations, or she would not have voluntarily dismissed her foreclosure claim as moot. *See id.* Finally, Travelers failed to meet its burden of proving its res judicata defense based on the absence of a certified copy of the motion to dismiss that Anita filed in federal court. *Jones*, 900 S.W.2d at 88–89. For each of these reasons, we conclude that the trial court's judgment was not proper based on Travelers' res judicata defense, and the Vogels' third point of error is sustained. Although summary judgment was not proper based on the res judicata defense, we still must consider whether the summary judgment was proper under any other theory. *State Farm Fire & Cas. Co. v. S.S.*, 858 S.W.2d at 380.

### Good Faith and Fair Dealing

In their fourth point of error, the Vogels claim that the trial court erred in granting summary judgment because Travelers owed them a duty of good faith and fair dealing under the Note. The Vogels allege that the duty arises from two sources: the Texas UCC and Texas common law.

The Vogels argue first that the Deed of Trust expressly established a duty of good faith and fair dealing by providing that it was to be construed as a security agreement governed by the UCC. Because Travelers acknowledged that Anita assumed the duties under the Note, the Vogels contend that Travelers implicitly agreed to extend the UCC duty of good faith and fair dealing arising under the Deed of Trust to the Vogels. *See* TEX. BUS. & COMM.CODE ANN. § 1–203 (Vernon 1994).

Travelers argues that the relevant agreement is not the Note but the October 4 agreement by which Travelers promised to consider extending the loan if certain conditions were met. Such an agreement is not a UCC agreement, because it is neither an agreement for the sale or lease of goods nor is it a security agreement. Travelers also argues that because the Deed of Trust was an agreement between Travelers and George, any duty created thereunder did not extend to Anita.

 Because the Deed of Trust places a lien on *real* property, it is not governed by the UCC. *See* TEX. BUS. & COMM.CODE ANN. § 9.104(10) (Vernon 1991) (excluding interests in and liens on real property from section 9 of UCC); *Long v. NCNB–Texas Nat'l Bank,* 882 S.W.2d 861, 864 (Tex.App.—Corpus Christi 1994, no writ). The Deed of Trust merely recites that it is to be construed as a security agreement under the UCC with respect to goods that are or are to become fixtures. Travelers does not owe a duty of good faith under the UCC with respect to its right to foreclose on the real property based on this recital in the Deed of Trust relating to fixtures.[2] Nor is there such a duty arising

from the October 4 agreement, which is not a contract for the sale or lease of goods.

 Furthermore, the Vogels have not shown that any common law duty of good faith and fair dealing exists between these parties. Ordinarily, there is no such duty in lendor/lendee relationships. *Federal Deposit Ins. Corp. v. Coleman,* 795 S.W.2d 706, 709 (Tex.1990); *English v. Fischer,* 660 S.W.2d 521, 522 (Tex.1983). The supreme court has recognized this duty only where a "special relationship," marked by a shared trust or an imbalance in bargaining power, exists. *Coleman,* 795 S.W.2d at 708–709; *see also Great American Ins. Co. v. North Austin Municipal Utility Dist. No. 1,* 908 S.W.2d 415, 418–20 (Tex.1995). The Vogels claim that they have a special relationship with Travelers, but they have presented no summary judgment evidence raising a fact issue to support their claim.

The Vogels' fourth point of error is overruled.

### Fraud

In their fifth point of error, the Vogels claim that Travelers committed actionable fraud in the October 4 agreement. The Vogels assert that Travelers lied when it said in the agreement that it would consider a two-year extension of the loan. Travelers argues that it always intended to honor that promise, but the promise was conditioned on the Vogels satisfying several conditions that were not met.

 To prove fraud, a plaintiff must show that (1) there has been a material misrepresentation, (2) the speaker knew the statement was false or made recklessly, (3) the speaker made the statement with the intention that it be acted upon in reliance, and (4) the other party suffered damages as a result. *T.O. Stanley Boot Co., Inc. v. Bank of El Paso,* 847 S.W.2d 218, 222 (Tex.1992). If, as here, the claim is that the speaker falsely promised to do an act in the future, the plaintiff must show that the speaker had no intention of performing the act at the time the promise was made. *Id.* at 222. Failing

---

2. Because we hold that no duty of good faith arises under the Deed of Trust, we do reach the question of whether Anita would have been owed such a duty by Travelers if it had arisen.

to discharge a promise to do an act in the future is not fraud unless the promise is made with an intent not to perform. *M.J. Sheridan & Son Co. v. Seminole Pipeline Co.*, 731 S.W.2d 620, 624 (Tex.App.—Houston [1st Dist.] 1987, no writ).

■ The Vogels ask this court to infer from the surrounding circumstances that Travelers' promise was false. The basis for this inference would be that the Vogels "reasonably and substantially performed all conditions precedent" to renewal and, therefore, Travelers' failure to renew raises a fact question as to whether it ever intended to renew. However, the Vogels admit Drucilla would not execute a warranty deed, which was one of the title company's requirements. In addition, the Vogels assert that it was not necessary to reopen the estate to amend the inventory, which was another of the title company's requirements. A title policy was one of the conditions to renewing the loan. By failing to meet the requirements imposed by the title company, the Vogels failed to meet the renewal conditions. We decline to infer that Travelers' promise to renew the loan was false when the Vogels failed to meet the conditions precedent to Travelers' obligation to perform on that promise. The Vogels' fifth point of error is overruled.

### PROMISSORY ESTOPPEL

The Vogels claim that the doctrine of promissory estoppel should have defeated summary judgment. They assert that they relied, to their detriment, on Travelers' assurances that the loan agreement would be extended. However, promissory estoppel is inapplicable in this case.

■ Promissory estoppel operates to enforce an otherwise unenforceable promise that a party has relied upon to his or her detriment. It cannot replace an enforceable contract. *Pasadena Assoc. v. Connor*, 460 S.W.2d 473, 481 (Tex.Civ.App.—Houston [14th Dist.] 1970, writ ref'd n.r.e.) (written contract renders promissory estoppel inapplicable). Here, the parties had an enforceable agreement, and the Vogels failed to satisfy the conditions contained therein. As Travelers states, the Vogels had no basis for relying on a promise to consider extending the

loan without first complying with the conditions put on the promise. *See T.O. Stanley Boot Co.*, 809 S.W.2d at 288; *Henderson v. Texas Commerce Bank–Midland, N.A.*, 837 S.W.2d 778, 781 (Tex.App.—El Paso 1992, writ denied). The Vogels' sixth point of error is overruled.

### WRONGFUL FORECLOSURE

In their seventh point of error, the Vogels contend that trial court erred in granting summary judgment in favor of Travelers on their wrongful foreclosure claim. The Vogels assert that the foreclosure was wrongful because Travelers failed to comply with the contractual terms of the Note and Deed of Trust by breaching its obligation of good faith in its performance and enforcement of those instruments. For the reasons previously stated, we hold that Travelers did not owe the Vogels any duty of good faith and fair dealing. Therefore, Travelers could not have breached the contractual terms of the Note and Deed of Trust by failing to comply with such a duty. Since the Vogels have admitted the foreclosure sale complied with the statutory foreclosure requirements, we overrule the Vogels' seventh point of error.

### RESTITUTION AND BREACH OF CONTRACT

In their eighth point of error, the Vogels contend that the trial court erred in granting a general summary judgment in favor of Travelers that disposed of their restitution and breach of contract claims because those claims were not addressed in Travelers' motion for summary judgment. Travelers acknowledges that it did not amend its motion to expressly address these new claims. However, Travelers asserts that the thrust of its motion conclusively negated potential recovery on these claims.

This court has previously recognized that reversing a summary judgment would be a meaningless exercise if the questioned recovery is precluded as a matter of law. *Chale Garza Investments, Inc. v. Madaria*, 931 S.W.2d 597, 601 (Tex.App.—San Antonio 1996, writ denied). In *Madaria*, the trial court's judgment encompassed a ruling on the defendant's counterclaims that were not

addressed in the summary judgment motion. *Id.* at 600–01. This court held that the defendants were precluded from recovering on those counterclaims as matter of law; therefore, a reversal of the trial court's judgment would be meaningless. *Id.; see also Mackie v. McKenzie,* 900 S.W.2d 445, 451–52 (Tex. App.—Texarkana 1995, writ denied); *Bieganowski v. El Paso Medical Center Joint Venture,* 848 S.W.2d 361, 362 (Tex.App.—El Paso 1993, writ denied).

▮ In this case, Travelers' motion expressly presents the Vogels' failure to satisfy the conditions imposed in the letter agreement as a ground for summary judgment. In addressing Vogels' other claims, we have concluded that the evidence established that the Vogels failed to satisfy the conditions to the loan extension as a matter of law. Because the Vogels failed to satisfy those conditions, they were not entitled to performance of the letter agreement by Travelers, and Travelers did not breach any contractual duty as a matter of law. *See Hohenberg Bros. Co. v. George E. Gibbons & Co.,* 537 S.W.2d 1, 3 (Tex.1976); *Marsh v. Marsh,* 949 S.W.2d 734, 743–44 (Tex.App.—Houston [14th Dist.] 1997, no writ). Therefore, a reversal of the summary judgment for consideration of the Vogels' breach of contract claim would be meaningless. *See Madaria,* 931 S.W.2d at 601.

With regard to the restitution claim, the Vogels alleged the following:

> Plaintiffs bring this suit against Defendant TRAVELERS for the recovery of all or part of the payments made by Plaintiffs on the Note. Plaintiffs would show that Defendant TRAVELERS expressly or impliedly acknowledged or represented to Plaintiffs that it recognized Plaintiff ANITA DE ARMOND VOGEL as the owner of the Property and payor, in fact, under the loan documents. In reliance on these facts and circumstances, Plaintiffs made the payments on the loan and paid the Property taxes. Plaintiffs would not have made the payments otherwise. By reason of Defendant's conduct, Plaintiffs have suffered damages in a sum within the jurisdictional limits of the Court.

Travelers asserts that the summary judgment evidence conclusively negates causation. Travelers contends that Anita made the payments under the Note in furtherance of the contract for deed she entered into with her father; she did not rely on Travelers' acknowledgment of her status as payor and owner in making payments.

▮ We hold that reversal of the summary judgment is not required as to the restitution claim for the same reason reversal is not required as to the breach of contract claim. In its petition, the Vogels state that they are instituting suit to recover damages arising out of Travelers' failure and refusal to renew and extend the Note and Deed of Trust. Thus, the Vogels' complaint lies with Travelers' failure to extend the Note, not its failure to recognize Anita as the payor under the Note or owner of the property.

Even if Travelers had recognized Anita as the payor and owner, the Note had matured. When the Note matured, the parties entered into an agreement setting forth the terms and conditions of a renewal. One of those conditions was a title policy. The title company required proof of ownership, including a warranty deed from Drucilla. The motion for summary judgment raised the failure to satisfy the conditions to the loan renewal, including the conditions to the issuance of the title policy, as a ground for summary judgment, and the summary judgment evidence conclusively established that the Vogels failed to satisfy those conditions. We hold that the Vogels could not recover on the restitution claim as a matter of law and recognize that reversing the summary judgment for consideration of this claim would be a meaningless exercise. *See Madaria,* 931 S.W.2d at 601. The Vogels' eighth point of error is overruled.

### CONCLUSION

Travelers proved that no genuine issue of material fact existed as to any of the causes of action alleged by the Vogels and that it was entitled to judgment on those claims as a matter of law. The judgment of the trial court is affirmed.