Affirmed and Majority and Dissenting Opinions filed October 10, 2002














Affirmed and
Majority and Dissenting Opinions filed October 10, 2002.

 

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-00-00081-CV

____________

 

SUPERIOR LAMINATE & SUPPLY, INC., Appellant

 

V.

 

FORMICA CORPORATION, Appellee

 

 

 

On Appeal from
the 113th District Court

Harris County, Texas

Trial Court
Cause No. 96-44611

 

 

 

M A J O R I
T Y   O P I N I O N

            A distributor sued its former
supplier, asserting claims for breach of contract, fraud, and promissory estoppel.  Based on
some of the jury’s findings, the trial court disregarded other findings and
entered a take-nothing judgment against the distributor.  We affirm.

                                             Factual and Procedural Background

            Superior Laminate & Supply,
Inc., was formed in June 1989 for the purpose of becoming an exclusive
distributor for Formica Corporation in the greater Houston area.  According to Superior’s
president, Paul Clark, during the negotiations leading to the creation of Superior and its
distributorship agreement with Formica, Formica’s regional and national sales
managers assured him that Formica would not terminate their relationship for as
long as Superior continued
to sell Formica products.  Superior
leased space in Houston, purchased
$400,000 in inventory from Formica, hired approximately twenty employees, and
otherwise purchased equipment for Superior’s use as
Formica’s distributor.

            Some time after January 1990, Clark’s father,
McGinnis “Mac” Clark, on behalf of Superior,[1]
signed a written Distributor Agreement with Formica.  This form agreement, apparently drafted by
Formica, included the following provision:

Either party may terminate
this Agreement with or without cause effective on any date after the date
hereof by giving to the other party written notice of such termination at least
sixty (60) days prior to such effective date.

            By letter dated August 17, 1990, Formica
delivered a copy of the signed Distributor Agreement to Mac Clark at Superior.  By its terms, this agreement expired on December 31, 1991.  The parties continued doing business without
a signed agreement from January 1992 until April 1993, when Paul Clark signed a
new Distributor Agreement with Formica. 
This second agreement expired on December 31, 1993, but it was extended by agreement
for one year until December
 31, 1994.  Toward the
end of 1994, Formica sent Clark another
Distributor Agreement that would run through 1998; however, Clark refused to
sign it.  The parties continued operating
without any written agreement from January 1, 1995, until the relationship was
terminated.

            On July 25, 1996, Formica informed Superior it was
terminating its distributor agreement with Superior, effective
September 30, 1996.  Superior responded
by bringing this suit on August 30,
 1996.  Superior claims
Formica agreed and promised that Superior would remain a Formica distributor as
long as Superior continued to promote Formica’s products and that Formica would
not terminate Superior without good cause. 
Following a four-day 

 class=Section2>

trial,
the court submitted a jury charge consisting of nineteen questions.  With respect to breach of contract, the jury
found the parties agreed that Superior would be
Formica’s exclusive distributor in Houston,
terminable only if Superior ceased
promoting and selling Formica’s products, but the jury failed to find that
Formica breached this agreement.  The
jury also found (1) Superior foreseeably and detrimentally relied on Formica’s promise
that it would not terminate the relationship as long as Superior promoted
and sold Formica’s products and (2) Formica committed fraud against Superior.  However, the jury further found Superior should
have discovered no later than August 17,
 1990—more than four years before the lawsuit was filed—that
Formica’s promise was false and that Formica had committed fraud.  The trial court disregarded the jury’s
answers on promissory estoppel and fraud and entered
a take-nothing judgment in favor of Formica.

                                                                         Fraud

            In its first issue, Superior argues the
trial court should have entered judgment against Formica on Superior’s fraud
claim.  In response to Question 6 of the
jury charge, the jury found that Formica committed fraud against Superior.  However, Question 6A asked, “By what date
should Superior in the
exercise of reasonable diligence have discovered Formica’s fraud, if any?”  The jury answered “August 17, 1990,” which is
the same date Formica delivered the first Distributor Agreement to Mac Clark at
Superior.  Based on this answer, Formica asked the trial
court to disregard the jury’s answer to Question 6 because Superior’s fraud
claim was barred by the statute of limitations. 
The trial court granted Formica’s request.

            To avoid limitations, Superior was
required to bring its fraud claim within four years of when the claim
accrued.  See Williams v. Khalaf, 802 S.W.2d 651, 657-58 (Tex.
1990).  A fraud claim does not accrue
until the plaintiff knew or in the exercise of reasonable diligence should have
known of the wrongful act and resulting injury. 
See S.V. v. R.V., 933 S.W.2d 1, 4 (Tex. 1996); Ruebeck v. Hunt, 142 Tex. 167, 176
S.W.2d 738, 739 (1943).

            Superior claims
there is no evidence to support the jury’s answer to Question 6A.  Superior does not
challenge the sufficiency of the evidence supporting the jury’s finding that it
knew or should have known of Formica’s wrongful act by August 17, 1990.  Instead, Superior argues it
did not suffer an actual injury until 1996, when Formica terminated the
distributorship.  Thus, Superior alleges it
could not possibly have discovered its injury resulting from Formica’s fraud
before then.  We disagree.

            Superior’s petition
alleges that Formica’s misrepresentations induced the creation of Superior, resulting
in damages “including the loss of value of investment made in establishing the
distributorship.”  Thus, for limitations
purposes, Superior’s injury
was suffered as soon as it made any investment in reliance on Formica’s false
promise that the distributorship would not be terminated without good
cause.  As soon as Superior discovered
(or should have discovered) that Formica in fact could terminate Superior with
sixty days’ notice, regardless of cause, Superior knew (or should have known)
that (1) Formica’s earlier statements were false and (2) Superior had invested
considerable money in detrimental reliance on a false promise.  Thus, Superior’s fraud
claim accrued at that time, even if Superior was
unaware of the full extent of its damages. 
See Quinn v. Press, 135 Tex. 60, 140
S.W.2d 438, 440 (1940).

            We find there is legally sufficient
evidence to support the jury’s finding that Superior should
have discovered Formica’s fraud no later than August 17, 1990, the date it received a
copy of the signed Distributor Agreement. 
Superior did not
bring suit on its fraud claim until August 30, 1996, over six years later.  Superior’s fraud claim
is thus barred by limitations, and the trial court did not err in disregarding
the jury’s answer to Question 6.  We
overrule Superior’s first
issue.




                                                                      Novation

            In
its second issue, Superior claims the
trial court committed reversible error in submitting a novation
instruction to the jury in connection with Superior’s
breach-of-contract claim.  In response to
Question 1, the jury found that Formica and Superior had agreed
that Formica could terminate Superior as its
exclusive distributor in the Houston area only
if Superior ceased
promoting and selling Formica’s products. 
Question 2 then asked the jury whether Formica failed to comply with the
agreement.  The trial court instructed
the jury that “[f]ailure to comply with one agreement
is excused if the parties agreed that a new agreement would take its
place.”  The jury answered “no” to
Question 2.

            Superior argues the
trial court’s instruction was improper because it instructs the jury on the
affirmative defense of novation, which Formica did
not plead, and thus Superior was
surprised by its inclusion in the charge. 
For an instruction to be proper, it must find support in the pleadings
and the evidence.  See Texas Workers’ Comp. Ins. Fund v. Mandlbauer, 34 S.W.3d
909, 912 (Tex.
2000).  However, an incorrect jury
instruction is only grounds for reversal if it probably caused the rendition of
an improper judgment.  Quantum Chem. Corp. v. Toennies,
47 S.W.2d 473, 480 (Tex.
2001).  To determine whether the
instruction resulted in an improper judgment, we examine the entire
record.  Id.

            Novation,
or the substitution of a new agreement in place of an existing agreement
between the same parties, is an affirmative defense to a claim for breach of
contract.  See Honeycutt v. Billingsly, 992 S.W.2d 570, 576-77 (Tex. App.—Houston
[1st Dist.] 1999, pet. denied).  Although
Formica did not plead novation, it did plead that Superior’s claims
are barred by the doctrine of merger.  A
merger occurs when the same parties to an earlier agreement later enter into a
written integrated agreement covering the same subject matter.  Fish v.
Tandy Corp., 948 S.W.2d 886, 898 (Tex. App.—Fort Worth 1997, writ
denied).  Whether merger occurs is
determined by the parties’ intent.  Id.  Formica contends that the challenged
instruction was properly submitted based on its merger defense.[2]

            Superior concedes
that “application of the merger doctrine has the same effect as the application
of the novation doctrine—where the doctrine is
applicable, the new contract will supplant the old.”  Given that the result under either
affirmative defense—one pleaded and one not—would be the same, Superior has not
established that the trial court’s instruction probably caused an improper
judgment.  Superior further
admits it “knew by the pleaded merger affirmative defense that Formica intended
to argue that the second contract supplanted the oral contract.”  Thus, Superior has not
demonstrated it was unfairly surprised by the inclusion of this
instruction.  Even if we were to conclude
the trial court’s instruction was incorrect, Superior has not
established sufficient grounds for reversing the judgment.  Accordingly, we overrule Superior’s second
issue.

                                                           Promissory Estoppel

            In its third and fourth issues, Superior asserts
the trial court erred in refusing to enter judgment on its promissory-estoppel claim.  In
response to Question 4, the jury found that Superior
substantially and foreseeably relied to its detriment
on Formica’s promise that Superior would
continue as Formica’s exclusive Houston
distributor as long as Superior promoted
and sold Formica’s products.  See Allied
Vista, Inc. v. Holt, 987 S.W.2d 138, 141 (Tex. App.—Houston [14th Dist.]
1999, pet. denied) (setting forth the elements of promissory estoppel).  The jury
further found Superior suffered
damages resulting from its reliance on Formica’s promise.  In its post-trial motion, Formica argued
these findings should be disregarded based on the jury’s finding that a valid
agreement existed between Formica and Superior, and the
trial court agreed.

            We conclude the trial court properly
disregarded the jury’s findings relating to Superior’s
promissory-estoppel claim.  As our supreme court stated in Wheeler v. White, “[t]he function of the
doctrine of promissory estoppel is, under our view,
defensive in that it estops a promisor
from denying the enforceability of the promise.”  398 S.W.2d 93, 96 (Tex.
1965).  Promissory estoppel
operates to enforce an otherwise unenforceable promise; “[i]t
cannot replace an enforceable contract.” 
Vogel v. Travelers Indem. Co., 966 S.W.2d 748, 754 (Tex. App.—San Antonio 1998, no
pet.).

            Superior does not
dispute that the existence of a valid agreement invalidates a promissory-estoppel claim, but instead contends Formica waived this
argument by failing to object to the unconditional submission of the
promissory-estoppel question.[3]  However, Formica’s post-trial motions did not
assert any error regarding the form of the charge.  Rather, Formica argued that, where a valid
agreement is found to exist, a promissory-estoppel
claim based on the same operative facts cannot survive, and any findings on
that claim should be disregarded.  A
party is not required to object to the charge to complain later that a finding
is immaterial.  Ballesteros v. Jones, 985 S.W.2d 485, 499 (Tex. App.—San Antonio 1998, pet.
denied).  The trial court properly
disregarded the jury’s findings with respect to this claim.  We overrule Superior’s third
issue.

            In its fourth issue, Superior claims the
jury question relating to the defense of limitations on its promissory-estoppel claim was improper.  Based on our resolution of Superior’s third
issue, we need not address this point.

            The
trial court’s judgment is affirmed.

 

                                                                                    

                                                                        /s/        Leslie Brock Yates

                                                                                    Justice

 

Judgment
rendered and Majority and Dissenting Opinions filed October 10, 2002.

Panel
consists of Justices Yates, Edelman, and Wittig.[4] (Edelman,
J. dissenting)

Publish — Tex. R. App. P. 47.3(b).




 








Affirmed and Majority and Dissenting Opinions filed October 10, 2002.

 

In The

 

Fourteenth Court of Appeals

_______________

 

NO. 14-00-00081-CV

_______________

 

SUPERIOR
LAMINATE & SUPPLY, INC., Appellant

 

V.

 

FORMICA
CORPORATION, Appellee

 

On Appeal from
the 113th District Court

Harris County, Texas

Trial Court
Cause No. 96-4461

 

 

D I S S E N T I N G   O P I
N I O N

 

            I agree with the majority opinion
except with regard to overruling Superior’s first
issue, challenging the sufficiency of the evidence to support the jury’s
finding that Superior should
have discovered Formica’s fraud by August 17, 1990. 
In particular, I differ with the majority’s statement that “for
limitations purposes, Superior’s injury
was suffered as soon as it made any investment in reliance on Formica’s false
promise [the “promise”] that the distributorship would not be terminated
without good cause.”  Where, as in this
case, an alleged fraudulent inducement consists of making a contractual promise
with no intent to 

 class=Section4>

perform it,
I do not agree that an injury is suffered before an actual failure or refusal
to perform is manifested.

            In this case, from 1990 to 1994, the
period in which the majority holds that the limitations period on the fraud
claim was running, and for two years thereafter, the parties were in an active
contractual relationship in which Formica neither breached nor threatened to
breach the promise.  During that period, Superior was in no
worse position economically than if the alleged fraud had not occurred and,
importantly, might never be.  That is, whatever Formica’s intent might have
been in entering into the contract, that intent might never have resulted in an
actual breach.  Instead, the contract
might have continued indefinitely or have been terminated for reasons unrelated
to Formica’s alleged intent not to perform. 
In that event, Superior’s
investment in reliance on Formica’s false promise would never have been an
injury, and can only be argued now to have been an injury then by hindsight
based on facts occurring six years after the date the majority concludes that
the limitations period began to run.

            Moreover, what useful purpose is
served by compelling a party to a productive contractual arrangement to sue the
other for entering into the contract without an intent to perform while the
other party is, in fact, performing satisfactorily?  In addition to straining the parties’ ability
to continue their dealings, how can liability be found or damages be calculated
where a plaintiff has been receiving everything it bargained for?  And if a breach does later occur, does it
promote judicial economy to potentially require two lawsuits over largely the
same facts?  Because I disagree with the
majority’s conclusion that Superior suffered
an injury at the time it made an investment in reliance on Formica’s allegedly
false promise, I would sustain Superior’s first
issue and reverse the corresponding portion of the trial court’s judgment.

 

                                                                                    

                                                                        /s/        Richard H. Edelman

                                                                                    Justice

 class=Section5>

 

Judgment
rendered and Opinion filed October
 10, 2002.

Panel
consists of Justices Yates, Edelman, and Wittig.[5]

Publish — Tex. R. App. P. 47.3(b).

 











            [1]  Mac Clark signed the Distributor Agreement in
his capacity as Secretary/Treasurer of Superior.





            [2]  We note, however, the trial court’s
instruction is identical to the instruction on novation
contained in the Texas Pattern Jury Charges. 
See Comm. on Pattern Jury Charges, State Bar
 of Tex., Texas Pattern Jury Charges—Business, Consumer, Employment PJC 101.30
(1997).  





            [3]  In other words, Superior contends
Formica should have objected to the fact that Question 4 was neither predicated
on a “no” answer to Question 1 (regarding the existence of an agreement) nor
asked in the alternative.





            [4]  Senior Justice Don Wittig sitting by
assignment.





                [5] Senior Justice Don Wittig
sitting by assignment.