COURT OF APPEALS

EIGHTH DISTRICT OF TEXAS

EL PASO, TEXAS




JOSEPH ZARZOSA,


 Appellant,


v.


CURTIS FLYNN,


 Appellee.
§


 


§


 


§


 


§


 


§


 


 § 


No. 08-07-00142-CV



Appeal from the


327th District Court


of El Paso County, Texas


(TC#2006-4174)



O P I N I O N


 Appellant, Joseph Zarzosa, appeals the trial court's grant of summary judgment in favor of
Appellee, Curtis Flynn. Because Zarzosa did not show that a genuine issue of material fact existed
as to his claims, we affirm the judgment of the trial court.

I. BACKGROUND


 Zarzosa was charged with an undisclosed crime following a traffic stop. The reason given
for the traffic stop was that Zarzosa was following the car in front of his too closely. Zarzosa's
attorney in the criminal case, James Lucas, believed that the reason given for the stop was
disingenuous, because, in Lucas's opinion, the state trooper who stopped Zarzosa could not have
seen how close his automobile was to the car in front of it.

 Lucas hired Flynn to testify as an expert at a hearing on Zarzosa's motion to suppress
evidence collected after the traffic stop. The arrangement was confirmed by letter dated October 28,
2004, which stated, "You indicated that you would charge my client $85.00 per hour and would
require $1,000.00 retainer, with any unused portion remitted back to the client. The suppression
hearing is scheduled for December 3, 2004." Lucas enclosed a check in the amount of $1,000 with
the letter.

 According to Zarzosa, Flynn failed to show up to the hearing, prompting Lucas to seek a
continuance of the hearing. The motion was granted, and the suppression hearing was re-set to a
later date. At the subsequent hearing, the court did not permit Flynn to testify as an expert witness. 
After the hearing, Flynn sent Lucas an invoice requesting additional payment in the amount of
$494.94. Zarzosa refused to pay the invoice.

 Zarzosa filed suit against Flynn on September 15, 2006, alleging numerous claims under the
Texas Deceptive Trade Practices--Consumer Protection Act, Tex. Bus. & Com. Code Ann. §§ 17.41
et seq. (the "DTPA"), breach of express and implied warranties, breach of contract, fraud, and
negligence. Flynn answered and subsequently filed a motion for summary judgment. Zarzosa did
not file a response and did not object to Flynn's summary judgment evidence. The only summary
judgment evidence was that which was attached to Flynn's motion. The trial court granted the
motion and entered a final judgment that disposed of all of Zarzosa's claims.

 On appeal, Zarzosa argues that the trial court erred, because genuine issues of material fact
existed as to certain of his DTPA claims, as well as to his fraud and breach of contract claims.
Zarzosa does not challenge the trial court's grant of summary judgment on his negligence claim, his
DTPA claim alleging unconscionable conduct, and his breach of warranty claims.


II. DISCUSSION


A. Standard of Review


 The standard of review for a traditional summary judgment asks whether the movant carried
the burden of showing that there is no genuine issue of material fact, so that judgment should be
granted as a matter of law. Diversicare Gen. Partner, Inc. v. Rubio, 185 S.W.3d 842, 846 (Tex.
2005); De Santiago v. West Tex. Cmty. Supervision & Corr. Dep't, 203 S.W.3d 387, 398 (Tex. App.
--El Paso 2006, no pet.). Summary judgment is proper if the defendant disproves at least one
element of each of the plaintiff's causes of action, D. Houston, Inc. v. Love, 92 S.W.3d 450, 454
(Tex. 2002), or if he establishes all elements of an affirmative defense to each claim. Shah v. Moss,
67 S.W.3d 836, 842 (Tex. 2001). Once the movant has established a right to judgment as a matter
of law, the burden shifts to the nonmovant to produce evidence raising a genuine issue of material
fact. City of Houston v. Clear Creek Basin Auth., 589 S.W.2d 671, 678-79 (Tex. 1979). When
reviewing a summary judgment, we take as true all competent evidence favorable to the nonmovant,
and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor. 
Southwestern Elec. Power Co. v. Grant, 73 S.W.3d 211, 215 (Tex. 2002) (citing Science Spectrum,
Inc. v. Martinez, 941 S.W.2d 910, 911 (Tex. 1997)).

B. Flynn's Summary Judgment Evidence


 Flynn's summary judgment evidence consisted of his affidavit, along with Zarzosa's petition,
Zarzosa's interrogatory responses, and a letter from Lucas reciting the agreement with Flynn. In his
affidavit, Flynn stated that he specialized in providing expert testimony in traffic accident
reconstruction and special investigations. He stated that, in late October 2004, he was approached
by Lucas about testifying as an expert at Zarzosa's suppression hearing. Flynn informed Lucas that
he would be able to testify at the December 3 hearing and would charge $85 per hour, with an up-front retainer fee of $1,000. Flynn stated that he never guaranteed Lucas that the total amount of
charges would not exceed $1,000, and that all discussions of expected costs were estimates. On
November 26, 2004, he met with Lucas to discuss his initial findings and anticipated testimony and
informed Lucas on that day that he would be traveling out-of-town to provide expert testimony in
a trial in Andrews, Texas, but that he most likely would be back for the December 3 suppression
hearing.

 Flynn stated that, by noon on December 2, he was still in trial at the proceeding in Andrews. 
Flynn contacted Lidia Flynn, who worked in his office, and instructed her to inform Lucas of the
potential conflict. Lidia Flynn called Flynn back minutes later and told him that she had spoken with
Dolores Zarzosa, Lucas's assistant, and informed her that Flynn probably would not make it to the
suppression hearing, but would let Lucas know of any changes. Later that afternoon, Flynn was
allowed to testify out of order and was released from the proceeding in Andrews. Flynn stated that
he called Lucas's office on the afternoon of December 2, during business hours, but only was able
to leave a voice mail for Lucas that he would be available for Zarzosa's suppression hearing, which
was set for 1 p.m. the next day. Flynn stated that he called Lucas's office the next morning and
spoke to Dolores Zarzosa, who confirmed that his voice mail message had been received. She told
him, however, that he did not need to attend, because the hearing was going to be reset.

 Flynn was informed of a new hearing date at approximately 8 to 8:30 a.m. on April 25, 2005,
which Flynn attended. According to Flynn, in addition to having him testify, Lucas asked Flynn to
assist him throughout the hearing and to attend the testimony of police officers who were scheduled
to testify before Flynn. Flynn stated that the hearing continued until a lunch break and then resumed
into the afternoon. When Flynn was called to testify, the prosecution objected to his testimony, and
the court sustained the objection. Flynn stated that Lucas asked to file a bill of exception, and Flynn
testified on the record for the purposes of the bill. The hearing was concluded in the late afternoon
of April 25.

C. Zarzosa's DTPA Claims


 In Issues One, Three, Four, and Five, Zarzosa challenges the summary judgment on certain
DTPA claims. Most of Zarzosa's arguments on these issues are based on his contention that
summary judgment was precluded, because Flynn attached Zarzosa's interrogatory responses to his
motion, thereby creating a fact issue. "Answers to interrogatories may be used only against the
responding party." Tex. R. Civ. P. 197.3. A party may not rely on its own interrogatory responses
to raise a fact issue in order to defeat summary judgment, even if the other party puts them into
evidence. Garcia v. National Eligibility Express, Inc., 4 S.W.3d 887, 891 (Tex. App.--Houston [1st
Dist.] 1999, no pet.) (interrogatory answers are incompetent summary judgment evidence when a
party relies on his own interrogatory answers to show there is a fact issue); Hanssen v. Our Redeemer
Lutheran Church, 938 S.W.2d 85, 94-95 (Tex. App.--Dallas 1996, writ denied) (plaintiff could not
rely on her interrogatory answers, which were included in the defendant's motion for summary
judgment, to defeat the defendant's motion); cf. Yates v. Fisher, 988 S.W.2d 730, 731 (Tex. 1998)
(noting in per curiam opinion that court of appeals erroneously used interrogatory responses in favor
of the answering party by relying on them to defeat summary judgment). (1)

 Zarzosa asserted numerous claims under the DTPA. He alleged that Flynn made false
representations concerning his ability to testify at the December 3 hearing. Zarzosa sought recovery
therefor under sections 17.46(b)(4), (5), and (7), Tex. Bus. & Com. Code Ann. §§ 17.46(b)(4), (5),
(7). Zarzosa also alleged that Flynn violated subsection (b)(24), id. at § 17.46(b)(24), by failing to
disclose that he could not attend the December 3 hearing.

 Flynn's summary judgment evidence established that he represented to Lucas that he could
attend the hearing. Flynn stated in his affidavit that he informed Lucas a week before the hearing
that he would be traveling out-of-town, but would be able to attend the hearing. The evidence also
showed that, despite a potential conflict, Flynn was able to return to El Paso to attend the hearing,
but that he was informed by Lucas's assistant that the hearing was being reset and that he did not
need to attend. Accordingly, the evidence established that Flynn would have been able to testify at
the December 3 hearing and that he did not misrepresent his ability to do so.

 Zarzosa alleged that Flynn violated subsection (b)(12), id. at § 17.46(b)(12), by representing
that he would be willing to perform for $1,000. Zarzosa also alleged that Flynn's failure to disclose
to Lucas that the fee might exceed the retainer of $1,000 and his failure to disclose that his fee was
not capped at $1,000 also violated subsection (b)(24), id. at § 17.46(b)(24). The uncontroverted
evidence showed that the parties' arrangement was that Flynn would charge $85 an hour, with an up-front retainer fee of $1,000. Flynn stated in his affidavit that he never guaranteed that the total
amount would not exceed $1,000. Moreover, Lucas's own letter concerning the arrangement does
not in any way indicate that charges for Flynn's services were limited to the $1,000 retainer, but
instead confirms that Flynn indicated that he would charge "$85.00 per hour and would require
$1,000.00 retainer, with any unused portion remitted back to the client." As such, the summary
judgment evidence established that Flynn did not fail to disclose material information concerning
the fee to be charged or falsely represent the fee arrangement.

 Zarzosa further alleged that Flynn made false representations concerning the services he
performed, by submitting an invoice for services he never performed, in violation of subsection
(b)(5), id. at § 17.46(b)(5). Zarzosa did not indicate in his petition which services were not
performed, and he did not provide any summary judgment evidence concerning this allegation. 
Flynn's uncontroverted summary judgment evidence was that, after reviewing the information that
Lucas provided him, the two discussed the expectation that Flynn's testimony was unlikely to exceed
one and one-half hours. Flynn stated that he and Lucas also discussed the fact that he would have
to spend additional time performing the calculations which formed the basis of his testimony and
preparing his testimony.

 According to Flynn, he prepared for and attended the April 25 hearing. Flynn stated in his
affidavit that he arrived at the hearing at approximately 8 to 8:30 a.m. Flynn stated that contrary to
the original agreement, Lucas asked him to assist him throughout the entire hearing and attend the
entire testimony of the police officer witnesses scheduled to testify before him. Flynn stated further
that he remained at the hearing until late afternoon, thereby exceeding the amount of time initially
thought necessary to testify. Accordingly, the summary judgment was proper on this claim, because
the evidence established that Flynn performed as required by the agreement, but that Lucas requested
Flynn to provide additional assistance that resulted in a final invoice that was more than initially
anticipated. For the foregoing reasons, we overrule Issues One, Three, Four, and Five.

D. Zarzosa's Fraud and Fraudulent Inducement Claims


 In Issue Two, Zarzosa claims that the trial court erred in granting summary judgment in favor
of Flynn on Zarzosa's fraud and fraudulent inducement claims, because Flynn did not move for
summary judgment on the claim.

 Rule 166a(c) of the Texas Rules of Civil Procedure requires that "[t]he motion for summary
judgment shall state the specific grounds therefor." Tex. R. Civ. P. 166a(c). Moreover, a summary
judgment motion must stand and fall on its own merits, and the nonmovant's failure to except or
respond cannot supply by default the ground for summary judgment or the summary judgment proof
necessary to establish the movant's right to such judgment. McConnell v. Southside Indep. Sch.
Dist., 858 S.W.2d 337, 342 (Tex. 1993). Grounds are sufficiently specific, if they provide the
nonmovant with fair notice of the basis upon which judgment is sought. City of Roanoke v. Town
of Westlake, 111 S.W.3d 617, 633 (Tex. App.--Fort Worth 2003, pet. denied).

 The motion for summary judgment recites in the introductory paragraph that Flynn requests 
summary judgment "against all claims brought by Plaintiff Joseph Zarzosa . . . ." In the following
section, Flynn states that "[t]his motion embraces all causes of action against Defendant." The
motion contains separate sections addressing Zarzosa's negligence, breach of contract, and DTPA
claims, but does not contain a section concerning Zarzosa's fraud claim and does not mention the
fraud claim.

 In support of his fraud claim, Zarzosa pleaded that Flynn "made false representations and
promises and engaged in a pattern of subsequent conduct, all of which was calculated to perpetrate
a fraud against Plaintiff Zarzosa. If Defendant Flynn had not engaged in such conduct, Zarzosa
would never have hired him as an expert." Zarzosa referenced the facts section of his petition, but
did not indicate in any detail the nature of the alleged promises and subsequent conduct. The facts
section of the petition does not indicate which statements by Flynn constituted misrepresentations. 
In the section of his petition concerning his DTPA claims, Zarzosa alleged Flynn misrepresented that
he was able to attend the December 3 hearing and provide expert testimony, misrepresented that he
would perform under the agreement for no more than $1,000, and misrepresented that he performed
work that he did not actually perform. In addition, Zarzosa alleged that Flynn failed to disclose that
his total bill might exceed $1,000. A fair reading of Zarzosa's petition shows that at least one, and
perhaps some or all, of the alleged misrepresentations that formed the basis for Zarzosa's DTPA
claims also formed the basis for his fraud and fraudulent inducement claims, because there were no
other allegations of misrepresentation in the petition.

 Flynn addressed each of the foregoing allegations in the DTPA section of his motion and in
his summary judgment evidence. It has been held that summary judgment may be affirmed on a
cause of action not specifically addressed in a summary judgment motion, if the elements urged in
the motion and established by summary judgment proof dispose of one or more of the elements of
the unmentioned cause. See Pinnacle Data Servs., Inc. v. Gillen, 104 S.W.3d 188, 197 (Tex. App.--Texarkana 2003, no pet.) (affirming summary judgment as to unaddressed breach of contract claim,
because recovery was precluded by terms of contract and trial court properly granted summary
judgment on declaratory judgment claim concerning same contractual provision); see also Vogel v.
Travelers Indem. Co., 966 S.W.2d 748, 755 (Tex. App.--San Antonio 1998, no pet.) (affirming
summary judgment as to unaddressed claims for restitution and breach of contract where the
summary judgment evidence established as a matter of law that the appellants failed to satisfy the
conditions of the agreement).

 In such instances, reversal would be meaningless, because the questioned recovery is
precluded as a matter of law. Pinnacle Data, 104 S.W.3d at 197; Vogel, 966 S.W.2d at 755. In this
case, Flynn presented uncontradicted summary judgment evidence on each of the misrepresentations
alleged by Zarzosa and obtained summary judgment thereon. These alleged misrepresentations were
not peripheral allegations, but were the sole basis for Zarzosa's DTPA claims. Since the
misrepresentation element of Zarzosa's fraud and fraudulent inducement claims has been disposed
of, reversal of the summary judgment for consideration of those claims would be meaningless in this
case. For this reason, we overrule this issue.

E. Zarzosa's Breach of Contract Claim


 In Issue Six, Zarzosa contends that the trial court erred in granting summary judgment on his
breach of contract claim. Zarzosa's main argument on this issue is based on his contention that
summary judgment was precluded, because Flynn attached Zarzosa's interrogatory responses to his
motion. As demonstrated above, this is not sufficient to create a fact issue in favor of Zarzosa. See
Yates, 988 S.W.2d at 731; Garcia, 4 S.W.3d at 891; Hanssen, 938 S.W.2d at 94-95.

 Zarzosa alleged that Flynn committed breach of contract by billing over $1,000, failing to
appear at the December 3 hearing, failing to notify Lucas that he would not be present at the
December 3 hearing, charging sales tax and other expenses, billing for work that was not done, and
overbilling. Flynn stated in his affidavit that he informed Lucas that he would be able to testify at
the hearing and would charge $85 an hour, with an up-front retainer fee of $1,000. Flynn stated that
he never guaranteed that the total amount would not exceed $1,000. Flynn also attached a letter
dated October 28, 2004, from Lucas in which Lucas described the agreements as follows:

 This letter is in regards to our conversation about retaining you as a traffic expert to
testify as an expert in the suppression hearing concerning Joseph Zarzosa. You
indicated that you would charge my client $85.00 per hour and would require
$1,000.00 retainer, with any unused portion remitted back to the client.


Accordingly, the uncontroverted summary judgment evidence established that the agreement did not
include a promise that Flynn would bill no more than $1,000. Where a summary judgment movant's
evidence is not contradicted, it will be taken as true. Casey v. Amarillo Hosp. Dist., 947 S.W.2d 301,
304 (Tex. App.--Amarillo 1997, writ denied); see also Bass v. Bass, 790 S.W.2d 113, 117-18 (Tex.
App.--Fort Worth 1990, no writ) (movant's uncontroverted summary judgment evidence would be
taken as true on appeal).

 As for the allegations that Flynn failed to attend the December 3 hearing or inform Lucas of
nonattendance, Flynn stated in his affidavit that he agreed to attend the December 3 hearing, but later
came to believe that he would not be able to make the hearing due to a potential conflict with regard
to the Andrews proceeding. Flynn stated that a person at his office contacted Lucas's office on
December 2 concerning the possibility that he would be unavailable for the December 3 hearing. 
Flynn further stated that he was subsequently released from the Andrews proceeding and informed
Lucas by voice message that he would be able to attend. Finally, Flynn stated that he contacted
Lucas's office on the morning of December 3 and was told that they had received his voice message
stating that he would be available, after all, but that the hearing was being reset.

 With regard to the remaining allegations, Flynn's summary judgment evidence established
that he prepared for the April 25 hearing and that, at Lucas's request, he remained and assisted Lucas
for the duration of the hearing, which lasted most of the day. As such, the uncontroverted evidence
established that Flynn performed pursuant to the agreement with Lucas. Moreover, Zarzosa admitted
in his petition that he refused to pay the $494.94 invoice from Flynn, that was in addition to the
$1,000 retainer. Finally, Flynn attended the April 25 hearing and testified, to the extent permitted
by the court. We overrule Issue Six.III. CONCLUSION

 We affirm the judgment of the trial court.


 KENNETH R. CARR, Justice


September 25, 2008


Before McClure, and Carr, JJ., and Ables, Judge

Ables, Judge, sitting by assignment

1. Zarzosa argued at length in his brief that summary judgment on his breach of contract claims and his DTPA
claims was improper, because Flynn's interrogatory answers, which were attached to Flynn's motion for summary
judgment, created a genuine issue of material fact. At oral argument, however, counsel for Zarzosa conceded without
solicitation that Texas law did not support this argument.