# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-04-00741-CV

**Wesley Eugene Perkins, Appellant**

**v.**

**Chase Manhattan Mortgage Corporation, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 261ST JUDICIAL DISTRICT
### NO. GN401164, HONORABLE CHARLES F. CAMPBELL, JR., JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Appellant Wesley Eugene Perkins appeals from the trial court's orders granting summary judgment in favor of appellee Chase Manhattan Mortgage Corporation and denying Perkins's motions to strike and for sanctions. We affirm the trial court's orders.

Initially, we note that Perkins is representing himself pro se. He asserts that as a pro se litigant, he should be held to less stringent standards than an attorney. Perkins is correct that we will attempt to read pleadings drafted by a pro se litigant liberally and with patience. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972) (holding that under Fed. R. Civ. P. 12, allegations in pro se inmate's pleadings are held "to less stringent standards than formal pleadings drafted by lawyers"). However, a pro se litigant is held to the same procedural standards as attorneys; to allow otherwise

could give pro se litigants an unfair advantage over litigants represented by counsel. *Mansfield State Bank v. Cohn*, 573 S.W.2d 181, 184-85 (Tex. 1978); *see Faretta v. California*, 422 U.S. 806, 834 n.46 (1975) (in federal criminal trial, defendant's "right of self-representation is not a license to abuse the dignity of the courtroom" or to fail "to comply with relevant rules of procedural and substantive law"). Therefore, we will attempt to read Perkins's pleadings and other documents liberally to discern the substance of his complaints. *See Johnson v. McAdams*, 781 S.W.2d 451, 452 (Tex. App.—Houston [1st Dist.] 1989, no writ) (citing *Haines*, 404 U.S. at 520). However, we will not overlook a lack of supporting facts or a failure to meet procedural requirements in considering Perkins's claims. *See Cohn*, 573 S.W.2d at 184-85; *Johnson*, 781 S.W.2d at 452-53.

### Factual and Procedural Background

In 1997, Perkins bought a house in Austin, borrowing $82,413 from Chase. In exchange for the loan, Perkins signed a deed of trust and adjustable rate note in favor of Chase. After Perkins defaulted on the loan, Chase, acting through its attorneys at Barrett Burke Wilson Castle Daffin & Frappier, L.L.P. ("Barrett Burke"), sent Perkins notice that he was in default. Perkins responded by filing a "Private International Administrative Remedy Demand." Perkins's "Demand" acknowledged his receipt of Barrett Burke's notice of default and said that he was not refusing to pay the "alleged debt," but instead was giving notice that the debt was invalid, that the claim was disputed, that Perkins did not dispute the amount of debt claimed, and that Barrett Burke must cease all collection activity until it sent Perkins a "verification as required by the Fair Debt Collection Practices Act." *See* 15 U.S.C.A. § 1692g(b) (West 1998). Perkins stated that any future communications by Barrett Burke, "absent the above-cited requisite 'verification of the debt,'"

2

would constitute Barrett Burke's "tacit admission, confession, and agreement" that it had "no lawful, bona fide, verifiable claim." Perkins attached a "Certified Promissory Note" stating that the note was tendered "as full satisfaction" of the alleged debt and that the note constituted Perkins's "promise to pay this instrument upon presentment and indorsement," citing the Uniform Commercial Code (the "UCC," codified at Tex. Bus. & Com. Code Ann. tit. 1 (West 1994 & 2002 & Supp. 2005)). The note stated that "[a]s an operation of law, [Chase] tacitly consents and agrees that there is accord and satisfaction by use of this instrument to satisfy [Chase's] claim and [Perkins] is hereby discharged from liability on this alleged account and the obligation is suspended in accordance with law as codified at UCC §§ 3-310(b), 3-311, and 3-603." Perkins also attached a "disclosure statement," which he said Chase and Barrett Burke were required to complete, asking forty-four questions such as the name and address of the debtor and debt collector, the "Alleged Account Number" and amount owed, whether the debt had been purchased from an original creditor, whether there was "verifiable evidence of an exchange of a benefit or detriment between Debt Collector and alleged Debtor," and whether "[a]t the time the alleged original contract was executed, . . . all parties [were] advised of the importance of consulting a licensed legal professional before executing the alleged contract." The form stated that failure to complete and return the form with a verification of the debt would constitute "tacit agreement that Debt Collector ha[d] no verifiable, lawful, bona fide claim re the hereinabove-referenced alleged account" and would mean that Barrett Burke waived all claims against Perkins and indemnified him against any and all fees and costs incurred.

In 2004, Chase, still represented by Barrett Burke, filed suit seeking judicial review of Perkins's documents, which Chase alleged were fraudulent "Republic of Texas documents,

3

instruments, liens, and claims" made against the real property and filed by Perkins in public records, including Travis County property records. Chase sought to clear the title of the land and extinguish Perkins's attempts to encumber Chase's interests in the property. Chase also sought to foreclose on the property, either judicially or under the terms of the contract and the property code. Chase asked the trial court to declare that Perkins had defaulted on the note, that Perkins was divested of any interest in the property, and that Perkins's documents purporting to establish a lien against the property were void. Chase further sought attorney's fees and asked the court to order a writ of possession should Perkins refuse to vacate the property.

Perkins responded by filing a "Sworn Rule 12 Motion for Attorneys to Show Authority," asking that Barrett Burke show its authority to act for and represent Chase. Perkins "demand[ed]" that the trial court require Chase's attorneys to appear and produce "their bona fide 'License to Practice Law' issued by The State of Texas," stating "[a]bsence thereof is tacit admittance that none exist." He stated that "a license to practice law is not a membership card provided by the bar association" and that he had "made a careful search of the records and can find no Texas State Office that issues licenses to practice law."

Chase filed a motion for summary judgment, contending that it held title through the vendor's lien, it was entitled to rescind the lien due to Perkins's nonpayment of the loan, and the trial court should annul the liens and other documents Perkins filed against Chase's interest in the property. As evidence, Chase produced an affidavit of Kay Walters, the foreclosure manager for Barrett Burke. Walters explained that Perkins took out a loan from Chase in 1997 then ceased making payments in August 2003. Walters attached the warranty deed, note, deed of trust, and a

4

payoff statement to show that Chase loaned Perkins the money and that Perkins still owed $76,590 in principal on the loan. The warranty deed, which was filed in the Travis County property records in 1997, recites that Chase was granted a vendor's lien and superior title in exchange for a $82,413 loan; the note provides that if Perkins failed to make the required payments, Chase could accelerate the loan; and the deed of trust provides that in the event of default and acceleration of the note, Chase could foreclose on the property.

In response, Perkins filed a "Judicial Notice Pursuant to 201(d) Texas and Federal Rules of Evidence," demanding that the trial court "provide a written list of all presumptions that the court will take notice of at any proceedings." Perkins quoted case law to the effect that statements of counsel made in briefs or arguments will not support summary judgment and that evidence must be provided through affidavit, testimony, or admissible documentation. Perkins also filed a "Sworn Motion to Strike Sham," arguing that Chase's petition should be struck entirely because Chase refused to abide by his International Administrative Remedy Demand and opted "to by-pass administrative remedy," thus disposing of any genuine issues of fact remaining. Perkins asserted that there was no proof that Perkins had filed his administrative lien documents in the public record or "used the money evidenced by the Loan Agreement," and argued that Chase was attempting to "foist 'Unofficial Documents'" and fraud upon the trial court. Perkins further filed a motion for sanctions and an "Affidavit in Opposition to Summary Judgment." Perkins's affidavit consists of 136 statements such as, "I am Wesley Eugene Perkins," "I do not consent to this matter," and, "This court does not have jurisdiction in this matter." Perkins asserted that Chase was offering unofficial documents and that the matter was settled. Perkins complained that Chase should not have

5

entered into evidence the original documents he sent as his Administrative Remedy Demand, stating that the "one time functioning" documents were now commercially inaccessible. Perkins stated that "[s]hould it be discovered that this court may have jurisdiction," the court "is rendered crippled," "incapable of rendering justice," and incompetent. Perkins asserted that because Chase and its attorneys did not act on his demands, Chase accepted his documents as true. Perkins attacked the veracity and competence of Kay Walters and Peggy Heller, Chase's lead attorney, and stated that Chase's summary judgment evidence was altered and incomplete; Perkins did not explain how the documents were unreliable. Perkins also stated without explanation that Chase's petition, motion for summary judgment, and affidavit in support of summary judgment were erroneous and unreliable. Finally, Perkins stated that he wanted "to examine the bond of this matter," the "underwriting of this matter," and the bonds and liability limits of all actors involved, and asserted that "summary judgment in this matter is not appropriate."

Chase responded to Perkins's various motions, stating that Perkins's pleadings and affidavit were not competent summary judgment evidence and did not raise a fact issue because they made unsupported legal conclusions and constituted inadmissible hearsay. Chase provided an affidavit by Charlie Wightman, Default Resolution Supervisor for Chase. Wightman averred that he retained Barrett Burke to handle Perkins's default and authorized Peggy Heller to retain an additional attorney to assist in representing Chase.

Following a hearing, the trial court denied Perkins's motion to strike, motion for sanctions, and motion to show authority. The court granted Chase's motion for summary judgment.[1] Perkins appeals in fourteen issues and several additional arguments, attacking the trial court's orders. Having read Perkins's brief carefully, it appears that he (1) disputes whether Chase's attorneys showed they had authority to act in the case, (2) argues that the trial court was incompetent and lacked jurisdiction over the cause, (3) attacks whether the trial court was bonded, under oath, and "in the office," (4) asserts that Chase tacitly admitted to the truth of Perkins's motions and pleadings, (5) complains that the trial court should have granted his motions to strike and for sanctions, (6) argues that the trial court should have filed findings of fact and conclusions of law, (7) contends that the trial court forfeited its jurisdiction by taking certain facts as true, (8) maintains that Chase destroyed valuable property by introducing the original promissory note into the record, (9) asserts that his debt was discharged when he tendered his promissory note, and (10) contends that the trial court erred in refusing to consider his affidavit and rendering judgment for Chase.

## Issues Related to Jurisdiction and Attorneys' Authority to Represent Chase

We will first address Perkins's issues related to whether Chase's attorneys showed themselves authorized to represent Chase. Perkins filed a motion demanding that Chase's attorneys show their authority to represent Chase by way of licenses to practice law issued by a state office. In response, Chase filed Wightman's affidavit stating that he had hired Barrett Burke to represent

---

[1] The trial court also granted Chase's motion for sanctions, but did not award attorney's fees or monetary sanctions. Similarly, in its order granting summary judgment, the court granted Chase's motion in all respects, but did not address Chase's request for attorney's fees.

Chase's interests in this matter and that he authorized Heller to hire an additional attorney to assist in the case. At the hearing, Perkins asserted that the affidavit should be disregarded because the pleading to which it was attached had some apparent typographical errors; although the motion stated that Wightman's affidavit was attached as "Exhibit 'A,'" the affidavit was not actually labeled as such; Wightman did not produce tangible proof that he was authorized to speak for Chase; and Chase never produced proof that it existed as a corporation. Perkins also argued that the affidavit was insufficient because it did not establish that the attorneys were properly licensed and authorized to practice law. On appeal, he contends that the attorneys did not establish their authority to represent Chase or practice law and, therefore, the trial court lacked jurisdiction over the matter. Perkins further demanded that the trial court, "being of and under proper oath and bond of and in the office," issue an order requiring the attorneys to show their authority, and he asserts on appeal that because the trial court did not satisfy that demand, the court was without jurisdiction. Finally, although it is not entirely clear, he seems to argue that the trial judge was not authorized to proceed because he was not elected to the particular trial court in question and did not show that he was both a United States citizen and licensed to practice law in Texas. *See* Tex. Const. art. V, § 7.

The rules of civil procedure allow a party to challenge whether a lawsuit is being prosecuted without authority. Tex. R. Civ. P. 12. If a motion is filed under rule 12, the challenged attorney must appear and show her authority to act. *Id*. At the hearing on Perkins's motions and Chase's motion for summary judgment, attorney Mark Hopkins produced Wightman's affidavit, in which he averred that he retained Peggy Heller to handle Perkins's default and that he authorized

8

Heller to retain Hopkins to serve as local counsel and assist with the litigation. Wightman averred that Heller and Hopkins were authorized to act on Chase's behalf in the proceeding against Perkins.

Chase's response stated that "Exhibit A," an "Affidavit of Representative of Chase Manhattan Mortgage Corporation," was attached as proof. However, Wightman's affidavit was not labeled "Exhibit A," although it was the only exhibit attached. Perkins argued that the affidavit was a sham and should not be considered because it was not labeled "Exhibit 'A'" and because the motion contained several errors. Perkins also quotes the trial court's statement agreeing with Perkins that the affidavit was "unacceptable" because of typographical errors in the response to which the affidavit was attached, arguing that the court recognized the defective nature of the affidavit but wrongfully accepted it as evidence nonetheless. In agreeing with Perkins, the trial court did not agree that the document was unacceptable as evidence and should be ignored. Instead, the court noted the errors and admonished counsel to be more careful in the future when preparing such documents. The court explicitly stated that the response and affidavit, although not perfect, were adequate to show that the attorneys had authority to represent Chase. The fact that the affidavit did not bear the label referenced in the response is of no matter because Wightman's affidavit was attached to the response, was the only document attached, and clearly stated that the attorneys were authorized to represent Chase in this case. By considering the documents and ruling that the attorneys had proven their authority, the trial court did not err or in any way "forfeit" its jurisdiction over the case. We overrule Perkins's eleventh issue.

Perkins also attacks the attorneys' authority, arguing that they did not prove that they were licensed to practice law in Texas. Rule 12 does not require an attorney to produce a physical

9

license to practice law issued by a state agency; it requires an attorney to show "sufficient authority to prosecute or defend the suit on behalf of the other party." Tex. R. Civ. P. 12. The legislature established the State Bar of Texas as an administrative agency authorized to assist the judiciary in governing the practice of law in Texas. *See* Tex. Gov't Code Ann. §§ 81.011, .012 (West 2005). Attorneys licensed to practice in Texas must enroll in the State Bar. *Id*. § 81.051 (West 2005). The supreme court has the exclusive jurisdiction to determine rules governing the admission to the practice of law in Texas. *Id*. § 81.061 (West 2005). A membership card issued by the State Bar is "evidence of membership" and thus, of a person's license to practice law. Tex. State Bar. R. art. III, §§ 2, 4, reprinted in Tex. Gov't Code Ann., tit. 2, subtit. G app. (West 2005). In their pleadings, Chase's attorneys listed their names, law firm names, and bar card numbers. Perkins did not argue that the attorneys had been disbarred or had never been licensed by the supreme court to practice law. *See Keller Indus., Inc. v. Blanton*, 804 S.W.2d 182, 185 (Tex. App.—Houston [14th Dist.] 1991, no writ) ("The practice of law is not a right bestowed upon an individual; rather, it is a license granted by the state subject to rules and regulations. However, once those rules and regulations are complied with by an individual, one who chooses his or her counsel should not be denied that choice by the courts except for compelling reasons." (citation omitted)). Wightman's affidavit showed that Heller and Hopkins had authority to represent Chase. *See Boudreau v. Federal Trust Bank*, 115 S.W.3d 740, 741-42 (Tex. App.—Dallas 2003, pet. denied); *Spigener v. Wallis*, 80 S.W.3d 174, 184 (Tex. App.—Waco 2002, no pet.). The trial court did not err in ruling that Chase's attorneys proved their authority to represent their client. We overrule issues one, two, seven, and twelve.

Although in issue three Perkins seems to attack the trial judge's authority to preside over the hearing and make rulings on the various motions, he did not raise any such issues before the trial court and did not file any objections to the judge. Therefore, he has waived any issues related to the trial judge's qualifications. We overrule issue three.

In several issues, Perkins contends that the trial court lacked or lost jurisdiction over the proceeding. We disagree.

Contrary to Perkins's assertions, the trial court did not lose jurisdiction over the matter as a result of Perkins's challenge to the attorneys' authority. The Texas Constitution grants district courts exclusive original jurisdiction over suits involving the title to land. *See* Tex. Const. art. V, § 8. Perkins admits that the property in question is located in Travis County, and thus, the Travis County district court gained subject matter jurisdiction over the cause when Chase filed its suit. *See Catalina Dev., Inc. v. County of El Paso*, 121 S.W.3d 704, 708 (Tex. 2003) (Enoch, J., dissenting) ("When the trial court obtained jurisdiction, which it did when Collins filed suit, it had the authority to decide the merits of the entire controversy."); *see also Haley v. Tax Appraisal Dist.*, No. 03-00-00179-CV, 2001 Tex. App. LEXIS 170, at *3-4 (Tex. App.—Austin Jan. 11, 2001, no pet.) (not designated for publication) (holding that trial court had subject matter over delinquent tax proceeding because district courts have exclusive jurisdiction over such suits, property was located in Bell County, and suit was filed in Bell County). Perkins admitted in his affidavit that he was domiciled in Travis County, and the court's docket sheet states that service of process was made on Perkins. Therefore, the court had personal jurisdiction over Perkins. *See Haley*, 2001 Tex. App.

11

LEXIS 170, at *3. Although Perkins asserted in his various filings that the pleadings did not constitute an answer to Chase's petition and that he did not concede the issue of personal jurisdiction, Perkins did not file a special appearance under rule 120a and he sought affirmative determinations and actions by the trial court. *See* Tex. R. Civ. P. 120a. Thus, Perkins waived any issue related to the trial court's exercise of personal jurisdiction. *See id.*; *Dawson-Austin v. Austin*, 968 S.W.2d 319, 322 (Tex. 1998) (party makes general appearance if he invokes trial court's judgment on question other than jurisdiction, recognizes that action is properly pending before court, or seeks affirmative action from court). Perkins did not show grounds to support his assertion that the trial court lacked jurisdiction over the subject matter or the parties. We overrule issues number four and five.

## Perkins's Remaining Procedural Issues

Perkins next asserts that Chase did not respond to his motions to strike or for sanctions and did not object to his affidavit in opposition to summary judgment and, therefore, admitted to the truth and validity of all matters asserted in those documents. Contrary to Perkins's assertions, Chase responded to Perkins's motions to strike and for sanctions by way of a reply to Perkins's response to the motion for summary judgment and a response to his motion to show authority and for sanctions. Chase further objected to Perkins's pleadings and affidavit filed in response to the motion for summary judgment, arguing that the documents were improper summary judgment evidence. Chase did not act or fail to act so as to ratify any of Perkins's pleadings or purported evidence. We overrule Perkins's sixth, eighth, and ninth issues.

12

In issue thirteen, Perkins seems to argue that the trial court made a statement that showed that the court was so incompetent that the court no longer had authority to proceed.[2] We cannot discern exactly what Perkins is contending by this issue. We do, however, note that the trial court was correct in its statement that courts are appropriate venues for determining the propriety of private agreements and settlements when those alleged settlements are disputed. Perkins has presented nothing for our review by this issue, and we overrule issue thirteen.

In his fourteenth issue, Perkins asserts that the trial court failed to file findings of fact and conclusions of law when requested to do so by Perkins. "The only cogent conclusion that can be reached from this lack of Findings of Fact and Conclusions of Law," Perkins argues, is that the trial court "has come to know that he was indeed without jurisdiction in this matter, incompetent in this matter, incompetent to hear this case, [and] incompetent to render judgment." Initially, we note that findings of fact and conclusions of law "have no place in a summary judgment proceeding" and therefore are not required to be filed. *Linwood v. NCNB Tex.*, 885 S.W.2d 102, 103 (Tex. 1994);

---

[2] Perkins argues in full:

As found in recorder's Record page 36, lines 3, 4 where recorded as said, by MR. PERKINS, "they're trying to bring a <u>private</u> <u>settled</u> <u>matter</u> <u>into</u> <u>court</u>." Whereupon the court responded, line 5, "<u>That's what this court is for</u>." To which MR. PERKINS says, "Right." (the reporter's Record fails to show the tone of the response as it seems to have been a question), and the court responds in lines 7, 8, "<u>That's what all these courts are for</u>." (Emphasis added.)

Goes to show a level of incompetent that removes judge actor from any position of competent authority in this matter.

13

*Golden v. McNeal*, 78 S.W.3d 488, 495 (Tex. App.—Houston [14th Dist.] 2004, pet. ref'd). Further, although the trial court signed its order granting summary judgment on November 3, Perkins did not file his request for findings and conclusions until November 29, twenty-six days later. Perkins's request, therefore, was not timely filed. *See* Tex. R. Civ. P. 296 (request must be filed within twenty days of signing of judgment). Finally, Perkins did not file a notice of past due findings and conclusions as required by rule 297. *See* Tex. R. Civ. P. 297. Therefore, any error in the trial court's failure to make findings of fact and conclusions of law is waived. *See In re A.I.G.*, 135 S.W.3d 687, 694 (Tex. App.—San Antonio 2003, no pet.); *American Realty Trust, Inc. v. JDN Real Estate-McKinney, L.P.*, 74 S.W.3d 527, 530 (Tex. App.—Dallas 2002, pet. denied). We overrule issue number fourteen.

In issue ten, Perkins asserts that the trial court showed it was biased against him when it allowed Chase's attorney to make statements explaining the posture of the case and Chase's arguments. At the hearing, Perkins frequently objected to the attorney's statements, asking whether the attorney was testifying. The trial court explained that the attorney was allowed to explain his position, much the same way Perkins had explained his positions before being sworn under oath to testify. Perkins is correct that an attorney's statements do not constitute evidence or support the granting of summary judgment. However, an attorney may speak in a hearing to summarize the evidence and arguments presented, which is what Chase's attorney did here. The trial court did not exhibit bias against Perkins. To the contrary, the court was quite patient during the proceeding, attempting to explain procedure and its decisions. Nor did the court grant summary judgment based on counsel's statements, rather than proper evidence. We overrule Perkins's tenth issue.

14

**Propriety of Summary Judgment**

In addition to the fourteen issues set out above, Perkins also makes a broad attack on the propriety of the trial court's granting of summary judgment, arguing that by his International Remedy Demand, he made a good faith effort to verify and settle Chase's claim. He again attacks the trial court's jurisdiction and argues that Chase did not establish that it had standing to bring or that the court had subject matter jurisdiction over the cause. Perkins further complains that Chase destroyed the commercial value of the promissory note he provided in response to the notification that he was in default.

A motion for summary judgment is properly granted if, when the evidence is viewed in the light most favorable to the non-movant, a movant establishes itself entitled to judgment as a matter of law. *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548-49 (Tex. 1985). We review *de novo* a trial court's decision to grant summary judgment. *Natividad v. Alexsis, Inc.*, 875 S.W.2d 695, 699 (Tex. 1994).

Perkins invokes the UCC to argue that he attempted to tender performance under the deed and note by sending Chase his "Certified Promissory Note." However, real estate contracts are not governed by the UCC; the UCC applies only to sales of goods. *See* Tex. Bus. & Com. Code Ann. § 2.102 (West 1994); *Gupta v. Ritter Homes, Inc.*, 633 S.W.2d 626, 627 (Tex. App.—Houston [14th Dist.] 1982) (cause of action under UCC was "unfounded because sales of realty . . . are not within the scope of the Code"), *rev'd on other grounds*, 646 S.W.2d 168 (Tex. 1983); *see also* Tex. Bus. & Com. Code Ann. § 9.109(d)(11) (West 2005) (chapter 9 of UCC does not apply to creation or transfer or interest in or lien on real property); *Vogel v. Travelers Indem. Co.*, 966 S.W.2d 748,

15

753 (Tex. App.—San Antonio 1998, no pet.) (discussing former UCC § 9.104, now § 9.109, and stating that because "Deed of Trust places a lien on *real* property, it is not governed by the UCC"); *Long v. NCNB-Texas Nat'l Bank*, 882 S.W.2d 861, 864 (Tex. App.—Corpus Christi 1994, no writ) (same). Thus, Perkins's attempt to discharge his loan obligations through a promissory note under the UCC was not a defense to Chase's claim.[3]

Chase produced evidence in the form of affidavits and documentation showing that Perkins borrowed $82,413 from Chase to purchase a house. In exchange for the loan, Perkins signed a deed of trust granting Chase a security interest in the property and the right to accelerate the loan upon default. Perkins also signed a note promising that he would repay the loan amount over time and with interest. Chase produced a payoff statement setting out the balance due and an affidavit by Barrett Burke's foreclosure manager swearing that the payoff statement was a true and correct statement of the amount owed and averring that Perkins had not made any payments in the last year. Chase, therefore, established that it had a security interest in the property and that Perkins had defaulted on the loan.

Perkins did not answer Chase's motion with any evidence raising a genuine question of material fact. Perkins produced an "affidavit," which he argues established his defenses as a matter of law. We have already held that his averments were not deemed admitted or otherwise ceded by Chase. In his affidavit, Perkins did not raise any issues as to whether he took out the mortgage loan or had ceased making payments or whether Chase had a right to accelerate the loan

---

[3] We further note that Perkins already signed a promissory note when he took out the mortgage loan from Chase. His Adjusted Rate Note states that Perkins promised to repay the loan as specified in the terms of the note, and Perkins defaulted on those promises.

and foreclose upon the property. Instead, his affidavit consists of conclusory statements that he had been harmed by Chase's pleadings, that Chase had tacitly admitted that it had no claim, and that he had paid the loan through his promissary note. Such conclusory statements of fact or law are not competent summary judgment evidence. *See McIntyre v. Ramirez*, 109 S.W.3d 741, 749-50 (Tex. 2003); *Brownlee v. Brownlee*, 665 S.W.2d 111, 112 (Tex. 1984); *see also Walls Reg'l Hosp. v. Bomar*, 9 S.W.3d 805, 807 (Tex. 1999) ("characterizations of Boyett's conduct and motives were conclusory and do not create a fact issue"). The trial court did not err in granting summary judgment in favor of Chase.

## Conclusion

Chase established its right to summary judgment through competent evidence. Perkins did not produce contrary evidence raising a fact issue as to whether Chase had a right to foreclose on the property. We have overruled Perkins's fourteen issues and have held that the trial court properly granted summary judgment for Chase. We therefore affirm the trial court's order.

_____

David Puryear, Justice

Before Chief Justice Law, Justices B. A. Smith and Puryear

Affirmed

Filed:   June 16, 2006

17