**PINNACLE DATA SERVICES, INC., Appellant,**

v.

**Joseph GILLEN, Charles Baldridge, and MJCM, L.L.C., Appellees.**

**No. 06–02–00098–CV.**

Court of Appeals of Texas, Texarkana.

Submitted Feb. 19, 2003.

Decided March 28, 2003.

Opinion Overruling on Rehearing April 23, 2003.

Rehearing Overruled May 20, 2003.

Larry L. Evans, Allyson L. Mihalick, Beirne, Maynard & Parsons, LLP, Houston, for appellant.

Matthew L. Hoeg, W. Earl Touchstone, Andrews & Kurth, LLP, Houston, for appellees.

Before MORRISS, C.J., ROSS and CARTER, JJ.

## OPINION

Opinion by Chief Justice MORRISS.

In the present case, Pinnacle Data Services, Inc. (PDS) brought suit against Joseph Gillen, Charles Baldridge, and MJCM, L.L.C. (collectively referred to herein as GBM). PDS claimed GBM was guilty of unjust enrichment, member oppression, breach of contract, breach of fiduciary duty, breach of duty of loyalty, and civil conspiracy. PDS also claimed it was entitled to declaratory relief, as well as reformation. GBM filed a combination traditional and no-evidence motion for summary judgment, and the trial court granted the motion, dismissing all claims. On appeal, PDS brings the following points of error: (1) the trial court erred by granting summary judgment with respect to declaratory relief, member oppression, and unjust enrichment; and (2) the trial court

erred by granting more relief than GBM requested in its motion for summary judgment.

In 1997 Max Horton, Morris Horton, Joseph Gillen, and Charles Baldridge formed MJCM, L.L.C. (herein MJCM). The parties agreed that Gillen and Baldridge would each own twenty-five percent of MJCM, and PDS would own the remaining fifty percent.[1] The Regulations were signed by Gillen and Baldridge, individually, and by Max Horton, as president of PDS. The Articles of Organization (Articles) listed the original members as Gillen, Baldridge, and PDS. According to the Regulations and the Articles, MJCM was to be managed by its members. Further, the members agreed to receive payment in the form of profit distributions instead of salaries and bonuses. The distributions were made pursuant to the terms set forth in the Articles and Regulations.

However, as MJCM became more profitable, the members began to disagree over how the company should be managed. On August 29, 2000, the members convened for a meeting. At this meeting, Gillen proposed amendments to the Articles that would convert MJCM from member managed to manager managed, and Gillen would be named as manager. The Regulations provide that the Articles can only be amended by an affirmative vote of at least sixty-six and two-thirds percent of the *ownership interest,* while the Articles allow for their amendment by an affirmative vote of two-thirds of the *members.* The Regulations also provide that, to the extent the Regulations conflict with the Articles, the Articles control. Gillen and Baldridge voted to institute the proposed changes. After being named manager, Gillen relieved Max and Morris Horton of their duties with MJCM. Gillen also increased the number of employees and began paying himself and Baldridge salaries and bonuses.[2] PDS brought suit, and the trial court granted summary judgment in favor of GBM, and PDS brings this appeal.

Before reaching the merits of PDS's appeal, we must determine whether PDS's response to GBM's motion for summary judgment was properly before the trial court and is therefore properly before this Court. GBM filed its motion for summary judgment on December 21, 2001. The trial court set the summary judgment hearing for February 15, 2002. PDS filed its response on February 11, 2002, within seven days of the hearing. Further, PDS sought and obtained permission to file a late supplemental brief to its response.

■ The Texas Rules of Civil Procedure provide: "Except on leave of court, the adverse party, not later than seven days prior to the day of hearing may file and serve opposing affidavits or other written response." TEX.R. CIV. P. 166a(c). The Texas Supreme Court has consistently held that, without evidence in the record indicating that a late-filed summary judgment response was filed with leave of court, it is presumed the trial court did not consider the response, and it cannot be considered on appeal. *Benchmark Bank v. Crowder,* 919 S.W.2d 657, 663 (Tex. 1996); *Goswami v. Metro. Sav. & Loan Ass'n,* 751 S.W.2d 487, 490 n. 1 (Tex.1988);

1. PDS is owned by Max Horton. His brother, Morris Horton, participates in the management of PDS. Apparently, Max and Morris were under the impression that, despite technically not being members of MJCM, they would still have the right to participate in its management.

2. In order to determine the proper salaries to be paid, Gillen hired a third-party compensation consultant to issue a report indicating the appropriate salary to be paid employees holding the positions occupied by Gillen and Baldridge.

*INA of Tex. v. Bryant,* 686 S.W.2d 614, 615 (Tex.1985). A recent San Antonio Court of Appeals opinion applied this test and found the response was not before the trial court and could not be considered on appeal. *Neimes v. Ta,* 985 S.W.2d 132, 138 (Tex.App.-San Antonio 1998, pet. dism'd by agr.). In *Neimes,* Ta and Fisher, contended that, because the trial court ruled on objections to the substance of the late-filed response, there was an affirmative indication in the record that the trial court granted leave to file the response. The court, however, reasoned that the appellants were required to make those objections to preserve any potential error for appellate review and that ruling on objections was not enough to show the trial court considered the response. Because Ta and Fisher failed to produce evidence from the record that the trial court granted leave to file a late response, the court did not consider the response on appeal. *Id.* at 140.

■ Similarly, in the present case, PDS's response was not filed seven days prior to the hearing. *See* Tex.R. Civ. P. 166a(c).[3] PDS argues the record contains an affirmative indication that the trial court granted leave to file a late response. In support of its argument, PDS relies on the following language contained in the trial court's order granting leave to file a supplemental brief to its response: "It appearing to the Court that no prejudice from said filing will result to Defendants and the Supplemental Brief is pertinent to the issues raised in Defendants' Motion for Summary Judgment and Plaintiff's Re-

sponse, that said Motion should be GRANTED." That is insufficient.

In *Neimes,* the trial court, ruling on objections to the late response, mentioned the response in the record. *Neimes,* 985 S.W.2d at 139. However, the appellate court held that Ta and Fisher failed to produce evidence from the record that the trial court affirmatively granted leave to file a late response and took the response into consideration. *Id.* at 140. Further, the Texas Supreme Court has consistently held that, without evidence in the record indicating that a late-filed response was with leave of the trial court, it is presumed the trial court did not consider the response and it cannot be considered on appeal. *Crowder,* 919 S.W.2d at 663.

■ We are bound by the controlling statutory and case law. The mere mention of the response in the record, without more, does not overcome the presumption that the trial court did not consider the late response. Accordingly, without a showing in the record that the late-filed response was with leave of the court, this Court will not consider it on appeal. *See id.*

### Summary Judgment

■ A summary judgment is reviewed de novo. *Natividad v. Alexsis, Inc.,* 875 S.W.2d 695, 699 (Tex.1994). The question on appeal is not whether the summary judgment proof raises a fact issue, but whether the summary judgment proof establishes as a matter of law that there is no genuine issue of material fact as to one or more of the essential elements of the

**3.** At best, PDS contends it filed the response so the time and date stamp left by the after hours clock reflects 12:00 a.m. on February 9, but even if its assertion is accurate, the filing would still be late. More importantly, PDS failed to produce evidence contained in the record, and this Court has found none, that a

response was filed with the trial court any earlier than February 11. *See* Tex.R.App. P. 38.1(g); *Luckette v. State,* 906 S.W.2d 663, 668 (Tex.App.-Amarillo 1995, writ ref'd) (review by court of appeals is limited to confines of appellate record).

plaintiff's cause of action. *Gibbs v. Gen. Motors Corp.,* 450 S.W.2d 827, 828 (Tex. 1970). When reviewing a traditional motion for summary judgment, this Court must adhere to the following standards: (1) the movant has the burden of showing there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law; (2) in deciding whether there is a disputed issue of material fact precluding summary judgment, evidence favorable to the nonmovant will be taken as true; and (3) every reasonable inference must be indulged in favor of the nonmovant. *Limestone Prods. Distribution, Inc. v. McNamara,* 71 S.W.3d 308, 311 (Tex.2002).

■ In addition to a traditional motion for summary judgment, a litigant, after adequate time for discovery, may also file a summary judgment motion seeking dismissal of all or part of a lawsuit if there is no evidence to support at least one element of an adverse party's claim. TEX.R. CIV. P. 166a(i). By filing a no-evidence motion, the burden rests with the nonmovant to present more than a scintilla of evidence raising a genuine issue of material fact. *Haas v. George,* 71 S.W.3d 904, 911 (Tex.App.-Texarkana 2002, no pet.). A no-evidence motion for summary judgment is equivalent to a pretrial directed verdict, and the same legal sufficiency review applies. *Tex. Capital Sec. Mgmt., Inc. v. Sandefer,* 80 S.W.3d 260, 264 (Tex.App.-Texarkana 2002, no pet.). Therefore, we consider all the evidence in the light most favorable to the party against whom the no-evidence summary judgment was rendered, disregarding all contrary evidence and inferences. *Merrell Dow Pharm., Inc. v. Havner,* 953 S.W.2d 706, 711 (Tex.1997).

In the present case, GBM filed a combination traditional and no-evidence motion for summary judgment. In its motion, GBM expressly addressed PDS's claims for declaratory relief, unjust enrichment, and member oppression.

*Declaratory Relief*

■ PDS claimed it was entitled to the following declaratory relief:

(a) the Regulations control over the Articles with respect to member voting powers and procedures;

(b) the Amended Articles adopted on August 29, 2000 are void and of no effect;

(c) Pinnacle is a member-managed company;

(d) the election of Gillen as manager on August 29, 2000 is void and of no effect; and

(e) any amendments to the Articles and Regulations since August 29, 2000 are void.

It is undisputed that a determination of whether the Articles or the Regulations control will dispose of each claim for declaratory relief. The dispute arises from a conflict in the voting procedures set forth in the Regulations and the Articles. The Regulations provide in pertinent part:

At any meeting of Members, presence of Members entitled to cast at least sixty-six and two-thirds percent of the total votes of all Members entitled to vote at such meeting constitutes a quorum. Action on a matter is approved if the matter receives approval by at least sixty-six and two-thirds percent of the total number of votes entitled to be cast by all Members in the Company entitled to vote at such meeting or such greater number as may be required by law or the Articles for the particular matter under consideration.

On the other hand, the Articles provide:

Approval of 2/3 of the members is needed for (1) amending the articles of organization or the regulations; (2) changing the status of the Company from one in

which management is reserved to the members to one in which management is vested in one or more managers, or vice versa; . . . .

Therefore, if the Articles control, Gillen and Baldridge had the authority to amend the Articles and change the management structure of MJCM despite not having PDS's consent.

Under the Texas Limited Liability Company Act (TLLCA), the regulations of a limited liability company "may contain any provisions for the regulation and management of the affairs of the limited liability company **not inconsistent with law or the articles of organization.**" TEX.REV. CIV. STAT. ANN. art. 1528n, § 2.09 (Vernon Supp.2003) (emphasis added). Further, the first page of the Regulations provides:

> These Regulations are subject to, and governed by, the Texas Limited Liability Company Act and the Articles [defined as the Articles of Organization]. In the event of a conflict between the provisions of these Regulations and the mandatory provisions of the Act or the provisions of the Articles, the provisions of the Act or the Articles control.

It is undisputed that Max Horton, as president of PDS, signed the Regulations, which included the above clause concerning conflict between the Articles and the Regulations. Further, Baldridge signed and filed the Articles with the Secretary of State on March 31, 1997, making them available to the public.

Despite the express terms of the TLLCA and the Regulations, PDS asserted several arguments in support of its contention that the Regulations control, none of which are supported by law or evidence. For example, PDS contended that, because the Regulations were signed by all parties, it constituted a contract, and under rules of contract interpretation, the Regulations control over the Articles.

PDS cited no statutory or case law in support of this contention, and this Court has found none. In fact, such a holding would be in direct contradiction with the express language of the TLLCA and the Regulations. See TEX.REV.CIV. STAT. ANN. art. 1528n, § 2.09. PDS also contended it was not given a copy of the Articles until two years after the Regulations were signed, which made the Articles unenforceable. Again, PDS failed to cite authority for its contention. PDS has also failed to produce any evidence that it sought to obtain a copy of the Articles before that time, even though it signed Regulations that were expressly subordinate to the Articles. Further, the Articles were on file with the Secretary of State beginning March 31, 1997, and Max Horton admitted in his deposition that he kept a copy of the Articles in his desk. The terms set forth in the Regulations, Articles, and the TLLCA are not rendered inoperative because PDS failed to exercise diligence in obtaining a copy of the Articles before agreeing to their terms. See Frey v. DeCordova Bend Estates Owners Ass'n, 632 S.W.2d 877, 880 (Tex.App.-Fort Worth 1982), aff'd, 647 S.W.2d 246 (Tex.1983) (courts will not interfere with corporation's right of internal management provided governing body does not substitute legislation for interpretation, overstep bounds of reason, common sense, or contravene public policy). Therefore, PDS has not raised a genuine issue of fact, and the trial court did not err by granting summary judgment with respect to its claim for declaratory relief.

*Unjust Enrichment*

A party may recover under the unjust enrichment theory when one person has obtained a benefit from another by fraud, duress, or the taking of an undue advantage. *Pope v. Garrett,* 147 Tex. 18, 211 S.W.2d 559, 560, 562 (1948); *Austin v.*

*Duval,* 735 S.W.2d 647, 649 (Tex.App.-Austin 1987, writ denied). PDS alleges that GBM has been unjustly enriched by excluding PDS from the management of MJCM, maliciously suppressing profit distributions, receiving informal profit distributions by contributing to Gillen's and Baldridge's 401(k) plans, and wasting company funds by paying Gillen's and Baldridge's personal legal fees.

The Articles and Regulations control the actions of the members and managers of MJCM. Specifically, the amended Articles provide that MJCM will be managed by a manager, and "except as expressly provided in these Articles of Amendment or as may be required by the Act or other applicable law, no *member* shall have any right, power or authority to act for or on behalf of [MJCM]." (Emphasis added.) Further, under the amended Regulations, Gillen, as manager, had the authority to:

> [C]arry out the purposes, business, and objectives of [MJCM], including, but not limited to, the right to enter into and carry out contracts of all kinds; to employ employees, agents, consultants and advisors on behalf of [MJCM]; to lend or borrow money and to issue evidences of indebtedness; to bring and defend actions in law or at equity; to buy, own, manage, sell, lease, mortgage, pledge or otherwise acquire or dispose of [MJCM] property.

PDS has failed to set forth any evidence, other than their allegations, that GBM obtained a benefit through fraud, duress, or taking undue advantage of PDS. *See Pope,* 211 S.W.2d at 560; *Zipp Indus., Inc. v. Ranger Ins. Co.,* 39 S.W.3d 658, 663–67 (Tex.App.-Amarillo 2001, no pet.) (mere allegations are less than scintilla of evidence raising genuine issue of material fact). Therefore, PDS failed to produce even a scintilla of evidence indicating it was entitled to recover under unjust enrichment,

and the trial court did not err by granting a no-evidence summary judgment with respect to unjust enrichment.

*Member Oppression*

■ Member oppression has been defined as follows:

> 1. majority shareholders' conduct that substantially defeats the minority's expectations that, objectively viewed, were both reasonable under the circumstances and central to the minority shareholder's decision to join the venture; or

> 2. burdensome, harsh, or wrongful conduct; a lack of probity and fair dealing in the company's affairs to the prejudice of some members; or a visible departure from the standards of fair dealing and a violation of fair play on which each shareholder is entitled to rely.

*Willis v. Bydalek,* 997 S.W.2d 798, 801 (Tex.App.-Houston [1st Dist.] 1999, pet. denied) (citing *Davis v. Sheerin,* 754 S.W.2d 375, 381–82 (Tex.App.-Houston [1st Dist.] 1988, writ denied)).

PDS contends GBM committed member oppression by wrongfully withholding profit distributions, firing Max and Morris Horton from MJCM, failing to inform PDS of company actions, and paying for their personal legal fees in this lawsuit with MJCM funds. However, PDS failed to set forth any evidence in support of its claim for member oppression. *See Haas,* 71 S.W.3d at 911. Therefore, PDS failed to raise a genuine issue of material fact, and the trial court properly granted GBM's no-evidence motion for summary judgment with respect to member oppression. *See* Tex.R. Civ. P. 166a(i); *Grant v. Southwestern Elect. Power Co.,* 20 S.W.3d 764, 772 (Tex.App.-Texarkana 2000), *aff'd in part and rev'd in part on other grounds,* 73 S.W.3d 211 (Tex.2002).

### Claims Not Addressed in Motion for Summary Judgment

PDS contends that summary judgment should not have been granted with respect to its claims for breach of contract, reformation, breach of fiduciary duty, breach of duty of loyalty, and civil conspiracy because GBM did not address such causes of action in its motion for summary judgment. GBM concedes that it did not expressly mention those causes of action in its motion. However, GBM contends PDS waived error by failing to object to the absence of those causes of action, and in the alternative, a trial on the merits would be meaningless because the motion for summary judgment negated all factual bases for those causes of action.

■■■ Under Texas Rules of Civil Procedure, a motion for summary judgment "shall state the specific grounds therefor," Tex.R. Civ. P. 166a(c), and a no-evidence motion for summary judgment must "state the elements as to which there is no evidence." Tex.R. Civ. P. 166a(i). A motion for summary judgment must expressly present the grounds on which it is made, and it must stand or fall based on the grounds expressly presented in the motion. *McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 338 (Tex.1993). Further, a nonmovant is under no duty to object to the movant's failure to include a particular cause of action in its motion. *Id.; McKillip v. Employers Fire Ins. Co.*, 932 S.W.2d 268, 271 (Tex.App.-Texarkana 1996, no writ). Accordingly, PDS did not waive its right to complain on appeal that the trial court granted more relief than was requested.

Even though PDS was not required to object, GBM contends that summary judgment was proper because the motion for summary judgment negated all factual bases for those claims. To support its contention, GBM relies on *Vogel v. Travel-*ers Indemnity Co., 966 S.W.2d 748, 750 (Tex.App.-San Antonio 1998, no pet.). In *Vogel*, the appellate court ruled that a summary judgment granted on a breach of contract cause of action, not urged in the motion for summary judgment, should be affirmed if the elements urged in the motion and established by summary judgment proof disposed of one or more elements to the breach of contract cause of action. The court reasoned that reversing a summary judgment in that situation would be a meaningless exercise because the questioned recovery was precluded as a matter of law. *Id.* at 754; *see Chale Garza Inv., Inc. v. Madaria*, 931 S.W.2d 597, 601 (Tex.App.-San Antonio 1996, no writ). In the present case, GBM contends that, because the Articles control in the event of a conflict with the Regulations, PDS is precluded as a matter of law from recovering on its remaining claims.

■■■ With respect to PDS's breach of contract cause of action, a determination that the Articles control in the event of a conflict with the Regulations is dispositive. PDS pled that "Gillen and Baldridge breached their contract (the Company Regulation) with PDS by their actions on August 29, 2000." We have already found that the Articles control over the Regulations, and Gillen's and Baldridge's actions on August 29, 2000, were clearly authorized by the terms set forth in those documents. Therefore, it would be meaningless for this Court to reverse the summary judgment on PDS's breach of contract cause of action. *See Vogel*, 966 S.W.2d at 754.

■■■ On the other hand, this determination does not as a matter of law preclude recovery on PDS's remaining claims. For example, PDS contends it is entitled to reform the Articles so they are consistent with the Regulations. The underly-

ing objective of reformation is to correct a mutual mistake made in preparing a written instrument, so the instrument truly reflects the original agreement of the parties. *Brinker v. Wobaco Trust Ltd.,* 610 S.W.2d 160, 163 (Tex.Civ.App.-Texarkana 1980, writ ref'd n.r.e.). By implication, then, reformation requires two elements: (1) an original agreement, and (2) a mutual mistake made after the original agreement in reducing the original agreement to writing. *Cherokee Water Co. v. Forderhause,* 741 S.W.2d 377, 379 (Tex.1987). Accordingly, before this Court, or any other, can pass on the issue of reformation, there must be a determination of whether an agreement was reached prior to the execution of the Regulations and Articles, and if so, whether a mutual mistake was made in reducing that agreement to writing. Because GBM's motion for summary judgment did not address reformation, no evidence was presented to negate the existence of those elements, and PDS was under no duty to establish their presence. Therefore, the trial court erred by granting summary judgment with respect to reformation.

GBM also failed to address civil conspiracy in its motion for summary judgment. A civil conspiracy consists of "a combination by two or more persons to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means." *Firestone Steel Prods. Co. v. Barajas,* 927 S.W.2d 608, 614 (Tex.1996). The essential elements are: (1) two or more persons; (2) an object to be accomplished; (3) a meeting of minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as the proximate result. *Massey v. Armco Steel Co.,* 652 S.W.2d 932, 934 (Tex.1983). A determination that the Articles control over the Regulations is not dispositive on a claim to recover under civil conspiracy.

GBM failed to produce evidence that would disprove any of those elements as a matter of law. *See Gibbs v. Gen. Motors Corp.,* 450 S.W.2d 827, 828 (Tex.1970). For the same reasons summary judgment was improper for reformation, the trial court erred by granting summary judgment with respect to conspiracy.

In addition to the foregoing, PDS also contended that GBM breached its fiduciary duty and duty of loyalty. With respect to fiduciary duty, an informal relationship may give rise to a fiduciary duty where one person trusts in and relies on another, whether the relation is a moral, social, domestic, or purely personal one. *See Thigpen v. Locke,* 363 S.W.2d 247, 253 (Tex.1962); *Fitz-Gerald v. Hull,* 150 Tex. 39, 237 S.W.2d 256, 261 (1951). But not every relationship involving a high degree of trust and confidence rises to the stature of a fiduciary relationship. *Crim Truck & Tractor Co. v. Navistar Int'l Transp. Corp.,* 823 S.W.2d 591, 594 (Tex.1992). Accordingly, while a fiduciary or confidential relationship may arise from the circumstances of a particular case, to impose such a relationship in a business transaction, the relationship must exist before, and apart from, the agreement made the basis of the suit. *Transport Ins. Co. v. Faircloth,* 898 S.W.2d 269, 280 (Tex.1995). It has been well established that the directors of a corporation stand in a fiduciary relationship to the corporation and its stockholders, and they are without authority to act in a matter in which a director's interest is adverse to that of the corporation. *Dunagan v. Bushey,* 152 Tex. 630, 263 S.W.2d 148, 152 (1953). Further, the duty of loyalty dictates that a corporate officer or director must act in good faith and must not allow his or her personal interest to prevail over the interest of the corporation. *Landon v. S & H Mktg. Group,* 82 S.W.3d 666, 672 (Tex.App.-East-

land 2002, no pet.). The duty of loyalty requires an extreme measure of candor, unselfishness, and good faith on the part of the officer or director. *Int'l Bankers Life Ins. Co. v. Holloway*, 368 S.W.2d 567, 577 (Tex.1963); *Landon*, 82 S.W.3d at 672.

 GBM contends that, because their actions were justified under the Articles, a claim for breach of fiduciary duty and duty of loyalty would be without merit. The determination that the Articles control over the Regulations fails to negate facts that would, if proven, support these claims and therefore is not dispositive. There was nothing introduced into the record that would warrant a summary judgment, and the trial court erred by granting one with respect to breach of fiduciary duty and duty of loyalty.

For the reasons stated, summary judgment is affirmed with respect to declaratory relief, unjust enrichment, member oppression, and breach of contract; the judgment with respect to breach of fiduciary duty, breach of duty of loyalty, civil conspiracy, and reformation is reversed; and those claims are remanded to the trial court for further proceedings.

### ON MOTION FOR REHEARING

In its motion for rehearing, Pinnacle Data Services, Inc. (PDS) contends the entire case must have been remanded, not just those points that were not addressed in Joseph Gillen's motion for summary judgment. In support of its contention, PDS relies on *Uribe v. Houston General Insurance Co.*, 849 S.W.2d 447, 449–50 (Tex.App.-San Antonio 1993, no writ), and *Chessher v. Southwestern Bell Telephone Co.*, 658 S.W.2d 563 (Tex.1983). We have reviewed the relevant line of cases dealing with this issue. Our disposition is correct.

 We note that there has been, in the past, some confusion about whether certain summary judgments are final and appealable and about how they should be handled on appeal. Recent cases have put that confusion to rest. To the extent *Uribe* and *Chessher* would require a complete remand of this case, they, and cases of their lineage, have been superseded by subsequent, controlling precedent. Where, as here, a final summary judgment has disposed of a case and included causes of action not addressed in the underlying motion, that judgment is erroneous and must be affirmed as to the causes of action properly adjudged and remanded as to those causes of action not addressed in the underlying motion. *Jacobs v. Satterwhite*, 65 S.W.3d 653 (Tex.2001); *Bandera Elec. Coop., Inc. v. Gilchrist*, 946 S.W.2d 336 (Tex.1997); *Page v. Geller*, 941 S.W.2d 101 (Tex.1997); *Kleven v. Tex. Dept. of Criminal Justice–I.D.*, 69 S.W.3d 341, 344 (Tex. App.-Texarkana 2002, no pet.).

We overrule PDS's motion for rehearing.