HERRING BANCORP, INC.; C.C. Burgess; and C. Campbell Burgess, Appellants

v.

John MIKKELSEN, Acting Solely in His Capacity as Trustee of the John Mikkelsen Trust, Appellee

No. 07-15-00327-CV

Court of Appeals of Texas, Amarillo.

September 8, 2017

**218**

Stephen S. Gilstrap, Manuel Berrelez, Dallas, Cornell D. Curtis, Lubbock, Thomas S. Leatherbury, Dallas, for Appellants.

Lee F. Christie, Fort Worth, Robert L. Florance IV, Michael L. Atchley, for Appellee.

Before QUINN, C.J., and CAMPBELL and PIRTLE, JJ.

## OPINION ON REHEARING

Patrick A. Pirtle, Justice

By his motion for rehearing, Appellee, John Mikkelsen, acting solely in his capacity as Trustee of the John Mikkelsen Trust, contends this court's earlier opinion[1] and judgment are in error in four ways by: (1) improperly construing the Articles of Incorporation of Herring Bancorp, Inc., (2) mistakenly determining that the evidence supported a finding that preferred shareholders other than Mikkelsen had voluntarily exchanged their shares by the time his shares were redeemed in 2006, (3) failing to find that Appellants, Herring Bancorp, Inc., C.C. Burgess, and C. Campbell Burgess, admitted to a breach of the Articles of Incorporation by making a retender in 2013, and (4) rendering a judgment in favor of Appellants on the issue of attorney's fees. Finding Appellee's first three arguments to be nothing more than a restatement of his earlier arguments, but agreeing with him that the rendition of a judgment in favor of Appellants on the issue of attorney's fees was improper, we grant his motion for rehearing, withdraw our original opinion and judgment dated June 2, 2017, and, in lieu thereof, we issue the following opinion.

This appeal arises from a minority shareholder claim contesting the validity of a stock redemption purportedly implemented in violation of the articles of incorporation of a closely-held corporation and the related claims of minority oppression and breach of fiduciary duties. Appellants contend the trial court erred by setting aside Herring Bancorp's redemption of 300 shares of preferred stock owned by Appellee because those shares were properly redeemed as part of Herring Bancorp's conversion from a Subchapter C corporation to a Subchapter S corporation.[2] Appel-

1. *See Herring Bancorp, Inc., C.C. Burgess, and C. Campbell Burgess v. Mikkelsen*, No. 07-15- 00327-CV, 2017 Tex. App. LEXIS 5131 (Tex. App.—Amarillo June 2, 2017, no pet. h.)

2. Technically, there were two purported re-

lants further contend the minority oppression and breach of fiduciary duty claims are inapposite to the facts of this case, and the trial court erred by awarding the recovery of damages and attorney's fees to Appellee based on any alleged theory. Appellants further assert the trial court erred in failing to award attorney's fees to them. By a cross-appeal, Appellee contends the trial court erred by denying discovery of certain net worth information and by excluding evidence relevant to his claim for exemplary damages. We reverse and render, in part, and remand, in part.

BACKGROUND

Herring National Bank became a chartered bank in 1903. From 1982 to 1997, Appellee served as Chairman of that bank. Appellee's wife's family has had ties to Herring National Bank since its founding. Around 1972, C.C. Burgess purchased stock in Herring National Bank and he was elected to its Board of Directors shortly thereafter.

In 1984, Herring Bancorp, Inc. was formed as a holding company for Herring National Bank. Appellee was a shareholder and he served as Chairman of Herring Bancorp from its inception until 1992. At all times relevant to this matter, C.C. Burgess was also a shareholder and director of Herring Bancorp.

In 1992, control of Herring Bancorp shifted away from Appellee and in favor of C.C. Burgess and C. Campbell Burgess when a special shareholder's meeting was called and a new Board of Directors was elected. In response to the change in control, certain shareholders (including Appellee) filed a *quo warranto* lawsuit challenging the newly-elected board. Appellee's interest in the litigation was resolved when he and his family agreed to sell the Burgesses 10,000 shares, effectively giving control of the corporation to them. In return, Appellee was given a five-year contract to serve as Chairman and Chief Executive Officer of the bank until December 31, 1997. In January of 1998, Appellee sold his remaining 280 shares back to the corporation and was, at that time, completely disassociated with Herring Bancorp and Herring National Bank. Seven years later, in 2005, Appellee's mother passed away and he and his brother, Mallory, each inherited 150 shares of Herring Bancorp preferred stock.

A year later, Appellee discovered that Herring Bancorp was exploring the possibility of converting from a Subchapter C corporation to a Subchapter S corporation. To comply with Internal Revenue Service requirements, a Subchapter S corporation can only have one class of outstanding capital stock and no more than 100 shareholders, making it necessary for Herring Bancorp to eliminate the preferred class of shares.[3] In order to accomplish the process of consolidating all nonvoting shares into one class, the Board of Directors of Her-

demptions—one in 2006 and another "re-redemption" of the same 300 shares in 2013. At the time of the 2006 redemption, Mikkelsen's brother, Mallory, was a partial owner of the disputed shares of preferred stock; however, he assigned his shares to Appellee in June 2008.

3. According to its Articles of Incorporation, as amended, Herring Bancorp had four "classes" of stock (Class A Nonvoting Common Stock, Class B Nonvoting Common Stock, Class C Voting Common Stock, and Preferred Stock). Notwithstanding this designation of four separate classes, for purposes of determining whether a corporation qualifies for conversion to a Subchapter S corporation, the voting rights between shares is disregarded. Therefore, upon elimination of the preferred stock class of shares, Herring Bancorp had only "one class of outstanding capital stock" for purposes of conversion to Subchapter S status.

ring Bancorp formed a committee to determine which preferred shares would be exchanged for common stock and which would be redeemed in accordance with the redemption provisions contained in paragraph 5 of the Articles of Incorporation.[4]

According to the criteria established by that committee, in order to exchange preferred shares for common shares (1) a banking relationship must have existed between the preferred stock shareholder and Herring National Bank and (2) as a result of the conversion, each exchanging shareholder would have to "own at least 50 shares of Common Stock upon the conversion." Subject to these requirements, Herring Bancorp offered all preferred stock shareholders two choices, either (1) exchange their shares of preferred stock for common stock at an exchange rate of 1 share of common stock for every 7.8113 shares of preferred stock or (2) have their shares of preferred stock redeemed in accordance with the terms and provisions of the Articles of Incorporation, as amended. Based on the criteria set, neither Appellee nor his brother was eligible for an exchange of the shares of preferred stock for shares of common stock because, at the conversion rate set, neither would own at least 50 shares of common stock upon con-

version.[5] Although the shareholders of preferred stock were not offered any other alternatives, at least one shareholder of preferred stock converted a portion of her preferred shares for common shares, while allowing the remaining portion of her preferred shares to be redeemed. Either way, keeping shares of preferred stock was not an option.

On September 22, 2006, C.C. Burgess wrote Appellee and advised him that going forward with the elimination of the preferred stock class of shares in order to comply with requirements for Subchapter S status would require that his shares of preferred stock be redeemed. Burgess's letter continued "since the conversion factor will result in you and Mallory having only 19 shares of common stock each, we will be sending you and Mallory a letter expressing the Bank's intent to call your preferred stock. We will follow the rules set out in the Herring Bancorp organization papers for preferred stock redemption."

A notice letter dated October 31, 2006, bearing the salutation "Dear Preferred Stock Shareholder," was sent to Appellee advising him that as of 5:00 p.m. on November 20, 2006, his preferred stock would be redeemed and "you will cease to be a

---

**4.** The amended Articles of Incorporation provide, in part, as follows:

 5. Redemption:

 a. Preferred Stock. The Corporation, at the option of the Board of Directors, may at any time redeem the whole, or from time to time redeem any part, of the Preferred Stock outstanding by paying in cash therefor the sum of $95 per share, plus all dividends declared but unpaid thereon.... *Should only a part of the outstanding Preferred Stock be redeemed, the redemption will be effected by lot or pro rata, as prescribed by the Board of Directors.*

(Emphasis added). The redemption provisions further stated that following redemption, "a sum sufficient to redeem" will be deposited with a bank or trust company and "will be

deemed to constitute full payment of the shares" ... and the holders of those shares "will cease to be shareholders with respect to the shares and will have no rights with respect thereto...."

**5.** Appellee contended the conversion scheme was specifically designed to eliminate his family from further involvement with Herring Bancorp. According to Appellee, other than he and his brother, no other preferred shareholders fell outside the exchange criteria established by the committee. In response, Herring Bancorp maintained the exchange rate was determined by the value of a share of preferred stock in relationship to the value of a share of common stock.

holder of shares of Preferred Stock as of the Redemption Date and will only be entitled to the receipt of the Redemptive Price." The notice instructed him that in order to receive the redemptive price, he was required to deliver to the designated transfer agent: (1) a duly executed Letter of Transmittal and (2) his preferred stock certificates. That same date, Appellee wrote C.C. Burgess: "[my brother] and I are very sentimental about the preferred stock and wish to convert our preferred stock to common stock. It does not appear that you are nearing the 100 person threshold and I am assured that you are aware of the generational exception." Despite Appellee's request that his shares of preferred stock be exchanged for shares of common stock, on the redemption date, Herring Bancorp redeemed all of the outstanding shares of preferred stock. Specific as to Appellee, Herring Bancorp redeemed his 300 shares of preferred stock and placed sufficient funds to cover the redemptive price in an account in his name.

By email dated December 19, 2006, Appellee notified Herring Bancorp of a "wrongful redemption" for failing to comply with the Articles of Incorporation. He concluded that he and his brother remained preferred shareholders with the right to examine the books and records of Herring Bancorp. Responses to his emails reflected Herring Bancorp's position that Appellee and his brother were no longer shareholders and were not entitled to any additional information.

On July 30, 2007, Herring Bancorp's status as a Subchapter S corporation was accepted by the Internal Revenue Service. On February 5, 2008, Appellee was reminded by letter from a law firm that "all" of his shares of preferred stock had been redeemed in 2006 and the funds had been placed in an interest-bearing account available to him as soon as he surrendered the duly executed Letter of Transmittal and his preferred stock certificates. A Letter of Transmittal was never received and delivered and the stock certificates were never surrendered.

On August 20, 2008, Appellee filed suit against Herring Bancorp alleging that he was injured by the wrongful acts of Appellants in connection with the putative redemption of the 300 shares of preferred stock in 2006. Appellee alleged the redemption constituted a breach of contract based on the Articles of Incorporation of Herring Bancorp, Inc. In addition to seeking to set aside the purported redemption, Appellee further sought a declaratory judgment pertaining to his right to inspect corporate books and records, as well as the recovery of damages for breach of fiduciary duty, civil conspiracy, and oppression of a minority shareholder. Appellants counter-claimed for declaratory judgment regarding the rights of the parties with respect to the Articles of Incorporation, redemption, and tender. They further sought recovery of their own reasonable and necessary attorney's fees.

On August 4, 2011, the trial court granted a partial summary judgment on Appellee's breach of contract claim, holding that the 2006 redemption of the 300 shares of preferred stock was invalid. The lawsuit continued, however, on his claims of breach of fiduciary duties, civil conspiracy, and unlawful oppression of a minority shareholder. The partial summary judgment ruling prompted Herring Bancorp to once again attempt to redeem Appellee's 300 shares of preferred stock. Consequently, with his lawsuit still pending, on October 30, 2013, Appellee and his brother received a second *Notice of Redemption* notifying them that the Board of Directors had called for the redemption "of all

shares of Preferred Stock" on November 22, 2013.

By letter dated November 22, 2013, Herring Bancorp made Appellee an unconditional tender in the amount of $115,548.24 representing more than the redemption price, unpaid dividends, and interest. A cashier's check was issued and tendered; however, that check was never cashed. Following this second purported redemption, Appellee chose to continue prosecution of his lawsuit, amending his pleadings to attack the 2013 redemption on the same basis upon which he had attacked the 2006 redemption.

Appellee's remaining claims were tried to a jury in January 2015. After the trial court instructed the jury that, as a matter of law, Herring Bancorp had failed to comply with its Articles of Incorporation, the jury awarded $127,442 as reasonable attorney's fees "in connection" with that failure.[6] In addition, the jury awarded Appellee a total of $60,000 as reasonably anticipated attorney's fees through the various stages of appeal. The jury also rendered a verdict against C.C. Burgess and C. Campbell Burgess on Appellee's claim of oppression of a minority shareholder, awarding Appellee damages of $23,314.80. The jury further found that C.C. Burgess breached fiduciary duties owed to Appellee; however, it awarded zero damages. Finally, the jury found against Appellee on his civil conspiracy claim and his claims for exemplary damages.

Herring Bancorp filed various postjudgment motions challenging the jury's findings; however, those motions were ultimately denied. After incorporating the Au-

gust 2011 partial summary judgment, the trial court entered its final judgment on June 16, 2015. In its judgment, the trial court (1) found that Herring Bancorp had breached its Articles of Incorporation in the purported redemption of the 300 shares of preferred stock at issue; (2) declared the 2006 and 2013 redemptions to be void—leaving Appellee as a preferred shareholder with the right to inspect the books and records of the corporation; (3) declared that the Burgesses had wrongfully engaged in oppressive conduct towards Appellee; (4) awarded the recovery of $23,112, representing preferred dividends from October 31, 2006, through December 31, 2014, together with prejudgment interest; and (5) awarded the recovery of attorney's fees in the amount of $127,442, plus an additional $60,000 as reasonably anticipated attorney's fees through the various stages of appeal. Herring Bancorp's subsequent motion for new trial was denied and this appeal ensued.

Presenting nine issues, Appellants maintain that (1) they are entitled to judgment on Appellee's minority oppression claim because it is not a viable cause of action in Texas; (2) the trial court erred by concluding that the 2006 redemption violated the Articles of Incorporation; (3) they are entitled to judgment on Appellee's breach of contract claim because the 2006 redemption complied with the Articles of Incorporation; (4) the trial court erred by concluding that the 2013 redemption violated the Articles of Incorporation; (5) they are entitled to judgment on Appellee's declaratory judgment claim relating to the 2013 redemption; (6) they are entitled to judgment on Appellee's breach of fiduciary

---

6. The *Charge to the Jury* instructed the jury that "Defendant Herring failed to comply with the Articles of Incorporation of Herring Bancorp" when it redeemed Appellee's preferred stock in 2006. The jury was then asked to determine a reasonable fee for Appellee's attorney "in connection with the failure of Herring Bancorp to comply with the Articles of Incorporation."

duty claims because officers, directors, and majority shareholders do not owe a fiduciary duty to other shareholders or, alternatively, because the evidence was legally and factually insufficient to support the jury's finding of breach; (7) they are entitled to judgment on Appellee's claim for recovery of attorney's fees because (a) the evidence is legally and factually insufficient to show he was entitled to recover any attorney's fees, (b) even if entitled to recover attorney's fees, he failed to properly segregate those fees, and (c) the trial court failed to submit an issue regarding his entitlement to attorney's fees; (8) the trial court erred in failing to render a judgment in their favor on their claim for attorney's fees; and (9) the trial court erred by failing to grant a new trial after impermissibly commenting on the weight of the evidence by instructing the jury that the 2006 redemption breached Herring Bancorp's Articles of Incorporation, as a matter of law.

By a cross-appeal, Appellee asserts the trial court (1) erred by excluding evidence of Herring Bancorp's noncompliance with regulatory requirements and its failure to inform the Internal Revenue Service and regulators that the supposed Subchapter S conversion was compromised because two classes of stock continued to exist and (2) erred by denying his motion to compel discovery of net worth information which was relevant to his exemplary damages claim. Appellants contend Appellee's cross-issues are either waived or rendered harmless.

For purposes of logical analysis, we will address Appellants' issues as they relate to the three causes of action upon which Appellee obtained a favorable verdict: (1) breach of contract as it pertains to the Articles of Incorporation of Herring Bancorp, Inc. and the validity of the 2006 and 2013 redemptions (issues 2, 3, 4, and 5), (2) oppression of a minority shareholder (issue 1), and (3) breach of fiduciary duty as it pertains to majority and minority shareholders of a closely-held corporation (issue 6). Having addressed each cause of action *seriatim*, we will turn to the question of attorney's fees (issues 7 and 8), before disposing of Appellants' contention that the trial court erred by allegedly commenting on the evidence (issue 9) and Appellee's cross-issues.

ISSUES 2, 3, 4, AND 5—BREACH OF ARTICLES OF INCORPORATION AND THE PROPRIETY OF THE 2006 AND 2013 REDEMPTIONS

By his active pleadings, Appellee alleged Herring Bancorp's failure to comply with its Articles of Incorporation, as it pertained to the redemption of his 300 shares of preferred stock, constituted a breach of contract thereby entitling him to set aside either or both redemptions. Without any real substantive analysis, both Appellants and Appellee proceed on the assumption that a corporation's articles of incorporation constitute a contract between the corporation and its shareholders, thereby allowing a shareholder to bring a breach of contract cause of action for the failure to follow the stock redemption procedures set out in a corporation's articles of incorporation.[7] Accepting the as-

---

7. Appellee does cite this court to the holding in *Cotten v. Weatherford Bancshares, Inc.*, 187 S.W.3d 687, 703 (Tex. App.—Fort Worth 2006, pet. denied), holding that "[s]tatutes, articles, or contract provisions on the redemption or retirement of stock must be strictly complied with. Any right of redemption must be exercised in accordance with the terms of the contract or instrument giving the right." Without expressly holding that a corporation's articles of incorporation constitute a contract between the corporation and its shareholders, we do agree that an involuntary stock redemption is subject to being set aside if the provisions establishing a right to redemption are not followed.

sumption of the parties that an attempted stock redemption is subject to being set aside if the terms of the instrument giving rise to the right of redemption are not followed, without deciding whether the failure to follow those terms constitutes a breach of contract, we must construe Herring Bancorp's Articles of Incorporation in accordance with accepted rules of contract construction.

Here, none of the parties allege that the Articles of Incorporation are ambiguous, and we find that they are not. Therefore, we restrict our analysis to the plain language of the instrument to determine the rights, duties, and obligations of the parties. Construction of an unambiguous contract is a question of law for an appellate court. *Anadarko Petroleum Corp. v. Thompson*, 94 S.W.3d 550, 554 (Tex. 2002); *Petro Pro, Ltd. v. Upland Res., Inc.*, 279 S.W.3d 743, 749 (Tex. App.—Amarillo 2007, pet. denied). Accordingly, we review contract construction questions *de novo. Thompson*, 94 S.W.3d at 554. In construing an unambiguous contract, our primary duty is to ascertain the parties' intent as it is expressed within the four corners of the contract. *Id.* In fulfilling that duty, we give the contract its plain, grammatical meaning unless doing so would clearly defeat the intention of the parties. *Id.* To do so, we must examine the entire contract and attempt to harmonize all its parts, even if different parts appear contradictory or inconsistent. *Id.* This is so because we must also presume that the parties to the contract intended every clause to have some effect. *Id.* However, we will not hold the contract's language to impose a greater burden or special limitation on any grant of authority unless the language is so clear, precise, and unequivocal that we can reasonably give it no other meaning. *Id.*

As originally incorporated, Herring Bancorp had two classes of shares—preferred stock and common stock. A 1998 amendment to the Articles of Incorporation created four subclasses of common stock—Class A Nonvoting Common Stock, Class B Nonvoting Common Stock, Class C Voting Common Stock, and Preferred Stock. Furthermore, as amended, the Articles of Incorporation provide at least four relevant methods by which the corporation could acquire its own stock from an existing shareholder: (1) liquidation (Article Four, Paragraph 4), (2) redemption of preferred Stock (Article Four, Paragraph 5(a)), (3) redemption of class B nonvoting common Stock (Article Four, Paragraph 5(b)), and (4) repurchase of stock (Article Twelve). By reviewing these provisions together, we can hope to better decipher the overall intent of the parties concerning the corporate reacquisition of outstanding shares.

LIQUIDATION—ARTICLE FOUR, PARAGRAPH 4. In the event of any voluntary or involuntary liquidation, dissolution, or winding up of the affairs of the corporation, the outstanding shares of preferred stock were subject to liquidation by paying the shareholders of preferred stock "an amount equal to the par value of the shares plus any dividends declared and unpaid...." The shareholders of preferred stock were entitled to payment of the full liquidation amount due before any amount was to be paid to the shareholders of any common stock. The Articles of Incorporation, as amended, further provided that "[i]f the assets of the Corporation are insufficient to permit payment to the Preferred Stock shareholders of their full preferential amounts as herein provided, then the assets will be distributed ratably among the outstanding Preferred Stock." From this provision, we can see that the parties intended that preferred stock and common stock be treated differently, but that

shareholders of outstanding preferred stock were to be treated equally.

REDEMPTION OF PREFERRED STOCK—ARTICLE FOUR, PARAGRAPH 5(a). The corporation, acting by and through the Board of Directors, was also given the option of calling for the involuntary redemption of outstanding shares of preferred stock. At any time, the whole or any part of the outstanding shares of preferred stock was subject to redemption upon payment of the par value of the shares, $95, plus all dividends declared but unpaid. Should only a part of the outstanding shares of preferred stock be redeemed, "the redemption [was to] be effected by lot or pro rata, as prescribed by the Board of Directors." Again, we can see that the parties intended that holders of outstanding shares of preferred stock be treated equally.

REDEMPTION OF CLASS B NONVOTING COMMON STOCK—ARTICLE FOUR, PARAGRAPH 5(b). As originally adopted, the Articles of Incorporation did not provide any method for the "redemption" of common stock. A 1998 amendment to the Articles of Incorporation provided, however, for the involuntary redemption of class B nonvoting common stock, at the option of the Board of Directors. The provisions providing for the redemption of this class of common stock also provided that this particular class of shares could be redeemed "in whole or in part...." Because it was anticipated that class B nonvoting shares would be issued "from time to time in series," with each series being related to a "Profit Center" of the corporation or a subsidiary of the corporation, no provisions were made for the "by lot or pro rata" allocation of the shares to be redeemed. From this provision, we can see that the parties intended that shareholders of class B common stock being redeemed could be treated differently.

REPURCHASE OF STOCK—ARTICLE TWELVE. Finally, the Articles of Incorporation pro-vided that "[t]he Corporation is authorized to purchase, directly or indirectly, its own shares ... without submitting such purchase to a vote of the shareholders of the Corporation." Contrary to Appellee's position, this particular provision makes no distinction between shares of preferred stock and shares of common stock, nor does it require that shareholders of any class of stock be treated equally. To the contrary, this provision gave the corporation the unfettered discretion to purchase its own shares on any terms that might be negotiated between the corporation and a shareholder. Under this provision, subject to certain monetary restrictions, the corporation was free to purchase all, or any portion, of any class of stock and it was not required to treat shareholders of the same class equally.

Reviewing these four methods by which the corporation could acquire its own shares, the Articles of Incorporation allowed, even required, that the corporation treat shareholders of preferred stock differently from shareholders of common stock when it came to redeeming stock. This limitation did not, however, apply to the repurchase of outstanding shares. When repurchasing outstanding shares, whether common or preferred, the corporation was free to negotiate whatever terms and conditions it deemed appropriate, including the exchange of class of shares for another class of shares.

This distinction is critical when it comes to the disposition of the issues relating to Appellee's breach of contract cause of action. Appellee contends Herring Bancorp breached the contract it had with its shareholders, as manifested in its Articles of Incorporation, by failing to redeem his shares of preferred stock "by lot or pro rata." Appellee's argument is premised entirely upon the assumption that the called redemption was a redemption of less than

the whole of the outstanding shares of preferred stock. This assumption completely ignores the fact that the Articles of Incorporation provided an alternative means for the voluntary acquisition of all, or any part, of its outstanding preferred shares—a means by which the corporation was not required to repurchase shares of preferred stock on a lot or pro rata basis.

Appellee's position further relies on the contention that a "repurchase by a company of its redeemable shares by definition is a redemption." This is a simple logical fallacy because while all redemptions may be defined as a repurchase, not all repurchases can be defined as a redemption. The distinguishing character is that a redemption is an involuntary disposition of a security pursuant to a pre-existing agreement or right to acquire (purchase) that security in accordance with the terms and provisions of that agreement or right; whereas, a repurchase is a voluntary disposition of a security on terms and conditions to be negotiated at the time of the disposition and acquisition.

Appellants contend, and we agree, the evidence supports their contention that Herring Bancorp acquired a majority of the outstanding shares of preferred stock by "repurchasing" those shares in accordance with Article Twelve of the Articles of Incorporation, as amended. We further find the evidence conclusively establishes that, as of the designated redemption date (regardless of whether you look at the 2006 redemption or the 2013 redemption), all outstanding shares of preferred stock, including the 300 shares owned by Appellee, were redeemed by the corporation in accordance with Paragraph 5(a) of Article Four of the Articles of Incorporation, as amended. Because the redemption of the outstanding shares of preferred stock remaining after the repurchase-exchange constituted the whole of that class, the corporation was not required to apportion any fraction of the called redemption. Issues 2, 3, 4, and 5 are sustained.

ISSUE 1—OPPRESSION OF A MINORITY SHAREHOLDER

Questions 2 and 3 of the court's charge asked the jury to determine whether C.C. Burgess and/or C. Campbell Burgess engaged in oppressive conduct toward Appellee. Because the terms "oppress," "oppressive," or "oppression" are not defined by the Legislature in any Texas statutes, *Ritchie v. Rupe*, 443 S.W.3d 856, 866 (Tex. 2014), we must give the words their common meaning. In the context of a shareholder oppression case, "oppression" has been defined as follows:

1. majority shareholders' conduct that substantially defeats the minority's expectations that, objectively viewed, were both reasonable under the circumstances and central to the minority shareholder's decision to join the venture; or

2. burdensome, harsh, or wrongful conduct; a lack of probity and fair dealing in the company's affairs to the prejudice of some members; or a visible departure from the standards of fair dealing and a violation of fair play on which each shareholder is entitled to rely.

*Pinnacle Data Servs. v. Gillen*, 104 S.W.3d 188, 196 (Tex. App.—Texarkana 2003), *overruled by Ritchie*, 443 S.W.3d at 871 n.17. Oppressive conduct involves an abuse of power that harms the rights or interests of another person or persons and disserves the purpose for which the power is authorized. *Ritchie*, 443 S.W.3d at 866-67. In *Ritchie*, the Court specifically refused to recognize a common-law cause of action for minority shareholder oppression in closely-held corporations. *Id.* at 878. Instead, the Court concluded that section 11.404 of the Texas Business Organizations Code authorizes the only remedy for oppressive conduct by those in control of a corpora-

tion—appointment of a rehabilitative receiver. *See id.* at 877. *See also* TEX. BUS. ORGS. CODE ANN. § 11.404 (West 2012).

The Texas Supreme Court has clarified that *Ritchie* applies retroactively to minority-oppression claims pleaded and decided prior to *Ritchie* being handed down. *See Cardiac Perfusion Servs. Inc. v. Hughes*, 436 S.W.3d 790, 792 (Tex. 2014) (applying *Ritchie's* holding to a minority oppression claim decided before *Ritchie* was decided). *See also Sneed v. Webre*, 465 S.W.3d 169 (Tex. 2015).

The jury found that both C.C. Burgess and C. Campbell Burgess engaged in oppressive conduct toward Appellee and awarded him damages based on its answers to Questions 2 and 3. Because Appellee's oppression of a minority shareholder in a closely-held corporation is not a viable cause of action, we sustain issue 1.

ISSUE 6—BREACH OF FIDUCIARY DUTY

 The elements for breach of fiduciary duty are: (1) a fiduciary relationship between the plaintiff and defendant; (2) a breach of the duty by the defendant; and (3) injury to the plaintiff or benefit to the defendant. *Opperman v. Opperman*, No. 07-12-00033-CV, 2013 WL 6529228, at *3, 2013 Tex. App. LEXIS 14867 at *10 (Tex. App.—Amarillo Dec. 9, 2014, no pet.) (mem. op.). The Texas Supreme Court has never recognized a formal fiduciary duty between a majority and minority shareholder in a closely-held corporation. *Hughes*, 436 S.W.3d at 791 n.1. One's status as a co-shareholder in a closely-held corporation alone does not automatically create a fiduciary relationship between co-shareholders. *Opperman*, 2013 WL 6529228, at *4, 2013 Tex. App. LEXIS 14867, at *11. "A co-shareholder in a closely held corporation does not as a matter of law owe a fiduciary duty to his co-shareholder." *Id.* (citing *Pabich v. Kellar*, 71

S.W.3d 500, 504 (Tex. App.—Fort Worth 2002, pet. denied)).

Even in the context of disproportionate ownership interests, the vast majority of intermediate appellate courts of this State have declined to recognize a broad formal fiduciary relationship between majority and minority shareholders that applies as a matter of law to every transaction between them. *Opperman*, 2013 WL 6529228, at *4, 2013 Tex. App. LEXIS 14867, at *12. Furthermore, even if such a fiduciary relationship were to exist, the jury awarded zero damages. Issue 6 is sustained.

ISSUES 7 AND 8—ATTORNEY'S FEES

 By issue seven, Appellants contend they are entitled to judgment on Appellee's claim for recovery of attorney's fees because (a) the evidence is legally and factually insufficient to show he was entitled to recover any attorney's fees, (b) even if entitled to recover attorney's fees, he failed to properly segregate those fees, and (c) the trial court failed to submit an issue regarding his entitlement to attorney's fees. Attorney's fees are recoverable in a suit only if they are authorized by contract or statute. *Tucker v. Thomas*, 419 S.W.3d 292, 295 (Tex. 2013). Section 38.001(8) of the Texas Civil Practice and Remedies Code provides that "[a] person may recover reasonable attorney's fees from an individual or corporation, in addition to the amount of a valid claim and costs, if the claim is for . . . an oral or written contract." TEX. CIV. PRAC. & REM. CODE ANN. § 38.001(8) (West 2015). To recover attorney's fees in a breach of contract suit, a party must (1) prevail on the underlying claim and (2) recover damages. *In re Nalle Plastics Family Ltd. P'ship*, 406 S.W.3d 168, 172-73 (Tex. 2013).

Question 1 of the court's charge asked the jury to determine reasonable attorney's fees for Appellee related to "the failure of Herring Bancorp to comply with the Articles of Incorporation." The jury

answered $127,442. Because this question was premised on Appellee prevailing on his breach of contract claim, and because we have found error in that assumption, issue seven is sustained as to subpart (a) of that issue. Having granted the relief requested as to issue seven, subpart (a), we pretermit any discussion of subpart (b) and we defer any discussion of subpart (c) to our discussion of issue eight. TEX. R. APP. P. 47.1.

By issue eight, Appellants contend the trial court erred in failing to render judgment on their claim for attorney's fees incurred in pursuing a declaratory judgment concerning the validity of Herring Bancorp's redemption of Appellee's preferred stock and its tender of the redemption price in accordance with the terms and provisions of the amended Articles of Incorporation. Specifically, Appellants contend they are entitled to judgment in their favor for the recovery of reasonable and necessary attorney's fees in the sum of $10,500–$5,500 for services rendered in the pursuit of this claim at the trial court level, plus an additional $5,000 for services rendered at this level—the intermediate appellate court level. Appellants further seek the conditional recovery of the additional sum of $2,500 for services to be rendered at each stage of the three distinct stages in an appeal to the Texas Supreme Court (petition for review, merits briefing, oral arguments and completion).

■ In any proceeding under chapter 37 of the Texas Civil Practice and Remedies Code, commonly referred to as the Uniform Declaratory Judgments Act ("UDJA"), the trial court may award reasonable and necessary attorney's fees as are equitable and just. See TEX. CIV. PRAC. & REM. CODE ANN. § 37.009 (West 2015). The UDJA does not require an award of attorney's fees to the prevailing party. Rather, it entrusts the award of reasonable and necessary attorney's fees to the sound dis-

cretion of the trial court. Bocquet v. Herring, 972 S.W.2d 19, 20 (Tex. 1998). Therefore, while the rendition of a judgment granting a declaratory judgment may allow the award of such "reasonable and necessary attorney's fees as are equitable and just," it does not mandate such an award. See Edwards Aquifer Auth. v. Chem. Lime, Ltd., 291 S.W.3d 392, 405 (Tex. 2009) (stating that, where the party awarded attorney's fees is no longer the prevailing party, the trial court "should have the opportunity to reconsider its award"). See also Morath v. Tex. Taxpayer & Student Fairness Coal., 490 S.W.3d 826, 885 (Tex. 2016) (stating that "[w]here the extent to which a party prevailed has changed on appeal, our practice has been to remand the issue of attorney fees to the trial court for reconsideration of what is equitable. and just"). Accordingly, because Appellants are entitled to a declaratory judgment that the redemption of Appellee's preferred stock was completed in accordance with the amended Articles of Incorporation of Herring Bancorp and that the redemption price has been appropriately tendered, we sustain issue eight and we remand this matter to the trial court for the purpose of determining whether an award of reasonable and necessary attorney's fees is equitable and just pursuant to the provisions of section 37.009 of the UDJA.

Having remanded the issue concerning Appellants' claim for the recovery of reasonable and necessary attorney's fees, we pretermit any discussion of the contention made in issue seven, subpart (c), pertaining to the failure of the trial court to submit an issue to the jury on that question. TEX. R. APP. P. 47.1.

ISSUE 9—IMPERMISSIBLE COMMENT ON THE WEIGHT OF THE EVIDENCE IN THE CHARGE

Herring Bancorp argues alternatively to rendering judgment in its favor that it is entitled to a new trial because the trial

court abused its discretion in including a prejudicial comment on the weight of the evidence in the court's charge. Having rendered judgment in favor of Appellants as to each of Appellee's causes of action, and having rendered judgment as to their attorney's fees, we pretermit any discussion of issue 9 as not being necessary to a final disposition of this appeal. TEX. R. APP. P. 47.1.

APPELLEE'S CROSS-ISSUES

Given the disposition of Appellant's issues, an analysis of Appellee's cross-issues is not necessary to a final disposition of this appeal. TEX. R. APP. P. 47.1.

CONCLUSION

The judgment of the trial court is reversed and judgment is rendered that John Mikkelsen, in his capacity as Trustee of the John Mikkelsen Trust, take nothing on his claims for breach of contract, declaratory judgment, breach of fiduciary duty, civil conspiracy, and oppression of a minority shareholder. Furthermore, judgment is rendered that Herring Bancorp, Inc., C.C. Burgess, and C. Campbell Burgess have and recover a declaratory judgment, pursuant to the Texas Declaratory Judgments Act,[8] declaring that Herring Bancorp's redemption of Appellee's preferred stock and its tender of the redemption price in accordance with the terms and provisions of the Articles of Incorporation of Herring Bancorp, Inc. were, in all things, valid and enforceable; and, we remand this matter to the trial court for the sole purpose of determining whether an award of reasonable and necessary attorney's fees to Appellants is equitable and just pursuant to the provisions of section 37.009 of the UDJA.

---

8. TEX. CIV. PRAC. & REM. CODE ANN. §§ 37.001– 37.011 (West 2015 & Supp. 2016).